552 S.E.2d 339

**The STATE, Appellant,**

v.

**Roy JOHNSON, Respondent.**

No. 3376.

Court of Appeals of South Carolina.

Heard June 5, 2001.
Decided Aug. 6, 2001.
Rehearing Denied Sept. 19, 2001.
Certiorari Denied March 6, 2002.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Senior Assistant Attorney General Norman Mark Rapoport; and Solicitor Warren B. Giese, all of Columbia, for appellant.

Deputy Chief Attorney Joseph L. Savitz, III, of SC Office of Appellate Defense, of Columbia, for respondent.

CONNOR, J.:

The State appeals the trial court's refusal to sentence Roy Johnson to life imprisonment without the possibility of parole pursuant to South Carolina Code section 17–25–45. We affirm.

## FACTS

On September 1, 1999, a Richland County jury found Johnson guilty of armed robbery. Because Johnson had a prior armed robbery conviction resulting from a 1992 guilty plea, the State asked the trial court to sentence Johnson to life imprisonment without the possibility of parole under section 17–25–45. Defense counsel objected, arguing the State failed to give counsel written notice of its intent to seek a life sentence without parole.

The clerk's file contained a notice of the State's intention to seek a life sentence without parole. The notice was filed May 26, 1999. In addition, the assistant solicitor stated he handed a copy of the notice to Johnson that same day or the day after and included a copy of the notice in the discovery materials provided to defense counsel. In addition, the assistant solicitor stated he told defense counsel in May 1999 that the State would seek a life sentence without parole. In a memorandum submitted after the trial, the assistant solicitor alleged he permitted defense counsel "complete access" to his trial notebook, which contained a copy of the written notice filed with the clerk of court.

Defense counsel admitted "[t]here was a lot of talk by the solicitor before trial that he was going to seek life without parole; however, I was never given any notice that he was going to seek life without parole in a written form." Although defense counsel denied having received a copy of the written notice as part of the discovery material, he acknowledged he had actual notice of the State's intent to have Johnson sentenced to life imprisonment without parole.

The trial court took the matter under advisement. On September 9, 1999, the trial court sentenced Johnson to thirty years imprisonment. In declining to sentence Johnson to life imprisonment without parole, the trial court found: (1) Johnson himself had received written notice of the State's intention

to seek a life sentence without parole; (2) the State filed the notice with the clerk of court on May 26, 1999; and (3) defense counsel had actual notice of the State's intent, as evidenced by the fact that he had sought a continuance on that ground.[1] The trial court, however, further noted that, although the assistant solicitor stated he personally served written notice on defense counsel in July 1999, defense counsel stated he never received it. The trial court resolved this disagreement in Johnson's favor, finding there were no cover letters or other documents in either the solicitor's file or the public defender's file to suggest the State gave defense counsel written notice that it would request a life sentence without parole in the event of a guilty verdict.

## ANALYSIS

The State contends that, because defense counsel had actual notice of its intent to seek a life sentence in this case, the trial court erred in finding it did not give sufficient notice under the statute.

South Carolina Code section 17–25–45(A) provides in pertinent part:

Notwithstanding any other provision of law, except in cases in which the death penalty is imposed, upon a conviction for a most serious offense as defined by this section, a person must be sentenced to a term of imprisonment for life without the possibility of parole if that person has one or more prior convictions for:

(1) a most serious offense; . . . .

S.C.Code Ann. § 17–25–45(A) (Supp.2000). Paragraph (C) of the statute includes armed robbery as a "most serious offense." *Id.* § 17–25–45(C).

The General Assembly has made the sentencing provisions of section 17–25–45(A) mandatory. *Id.* § 17–25–45(G). Regarding the notice requirement, the statute provides:

---

1. Before Johnson's trial was scheduled to begin, defense counsel unsuccessfully moved for a continuance on the sole basis that he needed more time to prepare because Johnson was facing the possibility of a life sentence without parole.

Where the solicitor is required to seek or determines to seek sentencing of a defendant under this section, *written notice must be given by the solicitor to the defendant and defendant's counsel* not less than ten days before trial.

*Id.* § 17–25–45(H) (emphasis added).

The South Carolina Supreme Court has laid out the principles of statutory construction as applied to a criminal statute:

It is well established that in interpreting a statute, the court's primary function is to ascertain the intention of the legislature. When the terms of the statute are clear and unambiguous, the court must apply them according to their literal meaning. Furthermore, in construing a statute, words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation. Finally, when a statute is penal in nature, it must be construed strictly against the State and in favor of the defendant.

*State v. Blackmon,* 304 S.C. 270, 273, 403 S.E.2d 660, 662 (1991); *accord Kerr v. State,* 345 S.C. 183, 547 S.E.2d 494 (2001).

The South Carolina Constitution gives sole legislative power to the General Assembly. S.C. Const. art. III, § 1 ("The legislative power of this State shall be vested in two distinct branches, the one to be styled the 'Senate' and the other the 'House of Representatives,' and both together the 'General Assembly of the State of South Carolina.'"). By its words in the recidivist statute, the General Assembly has mandated that the solicitor "must" notify the defendant and the defendant's counsel in writing if the solicitor intends to seek a life sentence without the possibility of parole. For this Court to dismiss the clear and unambiguous language of the statute and merely require the defendant's counsel to have actual notice of the solicitor's intent to seek life without parole would have the effect of amending the statute. In our view, actual notice under section 17–25–45(H) is insufficient unless and until the General Assembly decides otherwise and amends the statute itself.

On appeal, the State has attempted to convince this Court of the "obvious purpose" of the notice provision and the "clear intent" of the General Assembly. However, we refuse to delve

beyond the clear and unambiguous words of the statute. This notice provision is clearly for the benefit of the defendant. If the General Assembly had not intended for the defendant's counsel to receive written notice, it would not have so provided.

The State also relies on the South Carolina Supreme Court's decision in *State v. Washington*, 338 S.C. 392, 526 S.E.2d 709 (2000), for the proposition that actual notice is sufficient under section 17–25–45(H). In *Washington*, when the defendant was initially indicted, he received written notice that the solicitor would seek life imprisonment without parole. Because of errors in the original indictment, the defendant was re-indicted. Upon re-indictment, the solicitor did not send a second written notice to the defendant. *Id.* at 398, 526 S.E.2d at 712.

The Supreme Court held the State "was not precluded from applying section 17–25–45 because, even without a second notice, Defendant had actual notice that the State would be seeking life without parole." *Id.* In so holding, the Supreme Court observed, "This Court has found that under such notice statutes, the law only requires actual notice." *Id.*

We believe there are two reasons the present case is distinguishable from *Washington*. First, the defendant in *Washington* did receive written notice of the State's intent to invoke section 17–25–45 at least once. It was only after his re-indictment that the solicitor did not send a second notice to the defendant. In the present case, the trial judge found Johnson's attorney *never* received written notice of the solicitor's intent to seek life imprisonment without parole as required under section 17–25–45(H). We find the difference between these two scenarios significant. Furthermore, we believe *Washington* was decided on the basis that the prior written notice sufficiently satisfied the statute's written notice requirement, and therefore actual notice was sufficient under the facts of that particular case.

Secondly, in support of their statement that "under such notice statutes, the law only requires actual notice," the Supreme Court cited *State v. McWee*, 322 S.C. 387, 472 S.E.2d 235 (1996), and *State v. Young*, 319 S.C. 33, 459 S.E.2d 84 (1995), both of which dealt with notice requirements in death

penalty cases. The statute requiring notice in *McWee* and *Young* only requires that "[w]henever the solicitor seeks the death penalty he shall notify the defense attorney." S.C.Code Ann. § 16–3–26(A) (Supp.2000). There is no mention in the statute of the manner in which the notice shall be given by the solicitor. We do not believe the Supreme Court intended to adopt a broad rule that, regardless of the circumstances of the particular case, all notice requirements in criminal statutes are satisfied by actual notice, notwithstanding the General Assembly's legislative mandate to the contrary. Therefore, we have concluded that the holding in *Washington* is limited to the specific facts set forth in the Supreme Court's opinion.

For these reasons, the trial judge did not err in refusing to sentence Johnson to life imprisonment without the possibility of parole because the solicitor failed to properly notify Johnson's counsel.

**AFFIRMED.**

HEARN, C.J. concurs and GOOLSBY, J., dissents in separate opinion.

GOOLSBY, J. (dissenting):

I dissent. I would hold that defense counsel's admission that he was aware of the State's intention to seek a life sentence without parole against his client gave the trial court sufficient reason to sentence Johnson accordingly.

The legislature has made the sentencing provisions of section 17–25–45(A) mandatory.[2] It would follow that, as long as the requirements of due process are met,[3] the State's failure

---

**2.** S.C.Code Ann. § 17–25–45(G) (Supp.2000). This subsection also states the solicitor has the discretion to invoke the sentencing provision under paragraph (B), which provides for a life sentence without parole upon conviction of a "serious offense" under certain conditions. In addition, South Carolina section 17–25–45(A) provides that a person convicted a third time of a most serious offense "*must* be sentenced to a term of imprisonment for life without the possibility of parole." *Id.* § 17–25–45(A) (emphasis added).

**3.** The requirement of written notice in section 17–25–45 is a procedural safeguard beyond the requirements of due process. *See Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962) (holding defendants must receive only reasonable notice and an opportunity to be heard

to provide written notice would more appropriately call for sanctioning those responsible for the procedural irregularity rather than allowing a repeat offender to avoid a statutorily required sentence.[4]

Moreover, in *State v. Washington*,[5] the South Carolina Supreme Court held section 17–25–45 requires only actual notice. In that case, the State initially sent the defendant written notice that it would seek a life sentence without parole under section 17–25–45. Because of errors in the indictment, the State later re-indicted the defendant, but did not send a second notice.

The supreme court held the State "was not precluded from applying section 17–25–45 because, even without a second notice, Defendant had actual notice that the State would be seeking life without parole."[6] In so holding, the supreme court observed, "This Court has found that *under such notice statutes*, the law *only* requires *actual notice*."[7]

---

relative to recidivist charges); *State v. Burdette*, 335 S.C. 34, 515 S.E.2d 525 (1999) (stating that, under the South Carolina Constitution, there is no duty to advise a defendant that the State is seeking an enhanced sentence under section 17–25–45); *see also Massey v. State*, 609 So.2d 598 (Fla.1992) (holding the prosecution's failure to serve notice of its intent to have the defendant sentenced as an habitual offender was harmless error in view of the stated purpose of the statutory notice requirement); *cf. Tasco v. Butler*, 835 F.2d 1120 (5th Cir.1988) (remanding for a determination of whether the defendant and his attorney had received sufficient notice to prepare a defense to recidivism charges and, if not, a determination of whether the defendant suffered prejudice as a result of this procedural deficiency).

4. *Cf. State v. Culbreath*, 282 S.C. 38, 316 S.E.2d 681 (1984) (holding the failure of the solicitor to act on a warrant within a certain period of time set by the South Carolina Rules of Criminal Procedure would subject the solicitor to contempt proceedings but would not invalidate the warrant or prevent subsequent prosecution).

5. 338 S.C. 392, 526 S.E.2d 709 (2000).

6. *Id.* at 398, 526 S.E.2d at 712.

7. *Id.* (emphases added). In support of this holding, the supreme court cited *State v. McWee*, 322 S.C. 387, 472 S.E.2d 235 (1996), and *State v. Young*, 319 S.C. 33, 459 S.E.2d 84 (1995), both of which dealt with notice requirements in death penalty cases. The majority correctly states that the statute requiring notice in these cases, in contrast to section 17–25–45, does not specify the manner in which the solicitor is

As the majority notes, the defendant in *Washington* had once received written notice of the State's intent to invoke section 17–25–45. Despite this factual difference, I would hold *Washington* is applicable to this case.

First, I think it is significant that, although the supreme court could have emphasized the fact that the requirements of section 17–25–45 had already been satisfied, it chose instead to base its holding on the fact that the defendant had actual notice of the State's intent. In other words, the basis for the supreme court's decision was not the State's earlier compliance with the statutory requirement of written notice when it initially indicted the defendant but the inference that the prior notice was sufficient to inform the defendant of the possibility that he could receive a sentence of life imprisonment without the possibility of parole after the second indictment was issued. In addition, as noted in footnote 4 of the opinion, "[t]here would be no duty to inform Defendant about seeking the statute's application if it were not for the statutory provision." [8]

The pivotal inquiry, then, is not whether the statutory procedures were followed, but whether the purpose of the statute has been satisfied. The reasoning used by the supreme court to support its decision in *Washington* indicates a trial court should avoid a "bright line" approach in deciding whether to sentence a defendant to life imprisonment without parole pursuant to section 17–25–45 when there is a dispute concerning whether the State complied with technical requirements of the statute.

Here, it is undisputed defense counsel had actual notice that the State intended to seek a sentence of life imprisonment

---

to give the notice. In my view, however, the very fact that the supreme court relied on *McWee* and *Young* in deciding *Washington* only strengthens the argument that the focus of 17–25–45 should be on whether the necessary individuals had actual notice rather than on whether notice was given in the manner prescribed in the statute. Certainly, the prospect of a death sentence is at least as serious, if not more so, than that of a life sentence without parole. As the supreme court must have recognized, to allow more leeway in notifying a defendant of the first possibility would be a disturbing incongruity in the administration of justice.

**8.** *Washington,* 338 S.C. at 398 n. 4, 526 S.E.2d at 712 n. 4.

without parole. In view of the supreme court's holding in *Washington* that section 17–25–45 requires only actual notice of such intent, I would hold the trial court erred in declining to sentence Johnson as the State requested. Accordingly, I would reverse Johnson's sentence and remand the case to the trial court for sentencing to life imprisonment without parole.