659 S.E.2d 140

**Patrick Delvon HARRIS, Respondent**

v.

**STATE of South Carolina, Petitioner.**

.No. 26458.

Supreme Court of South Carolina.

Submitted Jan. 23, 2008.

Decided March 10, 2008.

68

Attorney General Henry Dargan McMaster, Chief Deputy, Attorney General John W. McIntosh, Assistant Deputy, Attorney General Salley W. Elliott, Assistant Attorney, General Robert L. Brown, all of Columbia, for Petitioner.

Melisa White Gay, of Mt. Pleasant, for Respondent.

Justice BEATTY:

In this post-conviction relief (PCR) case, the Court granted the State's petition for a writ of certiorari to review the PCR judge's decision granting relief with respect to Patrick Delvon Harris's conviction for armed robbery and sentence of imprisonment for life without parole (LWOP). We reverse.

## FACTS

At approximately 12:00 a.m. on March 26, 1998, Jessie Brown and Kevin Outen, employees with Park Place Video in Columbia, observed an African–American male walk through the video poker establishment and leave after staying only a few minutes. Both employees believed the man was "scoping out" the place.

According to Brown, the same man returned at 2:00 a.m. At that time, Outen was on the phone with the store manager. Outen "buzzed in" the man unaware that he was accompanied by two masked men. As the men "rushed" in, one of the masked men pointed a gun at Outen and ordered him to hang up the phone and get on the floor. Outen complied but left the phone on the counter so that the manager could hear what was transpiring in the store. The other masked man ordered Brown at gunpoint to show him where the store kept the money. The man then took the money and handed it to one of his accomplices. Outen was then led by one of the masked men to a back room where two customers had been playing video poker. After hearing the commotion, the customers hid in the room and locked the door. The masked man kicked open the door and ordered Outen and the two customers at gunpoint to get on the ground and remain in the room. While they were in the room, the three captives heard several gunshots before the robbers exited the store. Shortly after the gunshots ended, one of the customers heard a car drive off.

According to Brown, the men "tore the place up" and then fired several gunshots before leaving. Brown identified the man that accosted him as the last man to leave the premises. He described this man as wearing a mask, a dark brown leather coat, and black leather pants.

When Brown emerged from one of the back rooms, deputies with the Richland County Sheriff's Department were already on the scene having been summoned by a 911 call placed by the store manager who heard the commotion while speaking with Outen on the telephone.

Deputies Ray Livingston and Jason Christophel, who were separately patrolling the Parklane Road area, responded to the call within less than a minute. When they arrived, they observed a masked man wearing black pants and a dark leather jacket exit the store and then flee the scene. Deputy Christophel pursued the suspect on foot while Deputy Livingston attempted to apprehend the suspect by driving around the adjacent area. Ultimately, Deputy Christophel apprehended and arrested the suspect within a few minutes. According to Deputies Christophel and Livingston, the suspect,

who was identified as Harris, said "You got me. I did it. You got me" as they were arresting him. The deputies then transported Harris back to the scene where they retrieved the mask that he had discarded as he exited the store. At the store, Harris told the officers that the other men had absconded in a burgundy-colored Thunderbird and gave the license plate number.

The deputies then transported Harris to the Richland County Sheriff's Department where he was interviewed by Investigators Eric Barnes and Stephen Curtis. According to Barnes and Curtis, Harris gave an oral statement in which he admitted his involvement in the armed robbery but declined to provide additional details. Eventually, Harris identified his accomplices as Stuart Young and Walter Lewis. The investigators also questioned Brown, Outen, the store manager, and the two customers regarding their account of the robbery.

With this information, the investigators compiled a photographic lineup and presented it to Outen. Outen was able to identify Stuart Young as the robber who did not wear a mask. The next day, the investigators arrested Young after they apprehended him while he was driving Harris's Thunderbird. Young gave a written statement to the investigators in which he admitted his involvement in the robbery and implicated Harris and Lewis. Lewis, who left the state after the robbery, was ultimately taken into custody after he was arrested in Virginia on unrelated federal charges.

On March 15, 1999, Harris was tried for armed robbery before Circuit Court Judge John Breeden. Because the jury could not reach a verdict, this trial ended in a mistrial. Harris was retried on March 30, 1999.[1] At the conclusion of the second trial before Circuit Court Judge James C. Williams, Jr., Harris was convicted of armed robbery and sentenced to life imprisonment without parole pursuant to section 17–25–45 of the South Carolina Code due to his nine prior convictions for armed robbery.[2] On direct appeal, this Court affirmed

---

1. At the beginning of this trial, Harris moved to have his trial counsel relieved. Harris claimed to have "conflicts" with counsel and was concerned about his representation given he was facing a life sentence.

2. Section 17–25–45 permits the State to seek a sentence of life without the possibility of parole if the person has one or more prior convictions

Harris's conviction and sentence in *State v. Harris*, Op. No.2001–MO–021 (S.C. Sup.Ct. filed Mar. 28, 2001).

Subsequently, Harris filed an application for post-conviction relief, alleging he was being held unlawfully due to: ineffective assistance of trial counsel; lack of subject matter jurisdiction; a sentence which violated ex post facto laws; and a sentence which violated Article XII, § 2 of the South Carolina Constitution.

Circuit Court Judge G. Thomas Cooper, Jr., held a hearing on Harris's petition. At the hearing, Harris's PCR counsel contended trial counsel was ineffective in that he failed to: (1) procure a copy of the trial transcript from Harris's first trial or move for a continuance until such transcript could be obtained; (2) have Harris served with sufficient legal notice of the State's intention to seek LWOP; and (3) adequately consult with Harris prior to the two trials. Additionally, PCR counsel alleged that appellate counsel was ineffective for failing to brief Harris's motion to relieve trial counsel. In support of these allegations, PCR counsel called Harris and his trial counsel, James Mann, as witnesses.

After the hearing, Judge Cooper issued an order granting Harris's application for post-conviction relief. In reaching this decision, Judge Cooper found trial counsel was ineffective and Harris was prejudiced by counsel's failure to procure a copy of the first trial transcript. Because there were "obvious inconsistencies in crucial testimony," Judge Cooper believed trial counsel should have obtained the transcript to prove these "substantial differences." Secondly, Judge Cooper found that counsel's pre-trial consultation with Harris was inadequate given the State was seeking a sentence of LWOP. Finally, Judge Cooper concluded Harris's LWOP sentence was void because there was no evidence that Harris had been served with written notice of the State's intent to seek a sentence of LWOP as mandated by the terms of section 17–25–45(H).

This Court granted the State's petition for a writ of certiorari to review the PCR judge's decision.

---

for a "most serious offense," which includes the offense of armed robbery. S.C.Code Ann. § 17–25–45(A)(1), (C)(1) (2003 & Supp. 2007).

## DISCUSSION

A defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Ard v. Catoe,* 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007), *cert. denied,* —— U.S. ——, 128 S.Ct. 370, 169 L.Ed.2d 247 (2007).

In a PCR proceeding, the applicant bears the burden of establishing that he is entitled to relief. *Caprood v. State,* 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000). In order to prove that counsel was ineffective, the PCR applicant must show that: (1) counsel's performance was deficient; and (2) there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Ard,* 372 S.C. at 331, 642 S.E.2d at 596. "Furthermore, when a defendant's conviction is challenged, 'the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

"This Court gives great deference to the post-conviction relief (PCR) court's findings of fact and conclusions of law." *Dempsey v. State,* 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005). A PCR court's findings will be upheld on appeal if there is "any evidence of probative value sufficient to support them." *Id.* This Court will reverse the PCR court's decision when it is controlled by an error of law. *Sheppard v. State,* 357 S.C. 646, 651, 594 S.E.2d 462, 465 (2004).

### I.

The State contends the PCR judge erred in finding trial counsel was ineffective in failing to consult with Harris prior to both trials. We agree with the State's contention.

In granting Harris relief on this ground, the PCR judge found Harris's allegations that his meetings with counsel were "limited in number and duration" and that he never received a copy of the discovery materials were "mainly unrefuted by trial counsel." Specifically, the judge noted that trial counsel did not know exactly how many times he had met with Harris to prepare for trial or whether he had provided Harris with the discovery materials. The PCR judge also found significant the fact that counsel did not produce any time records to document his preparation with Harris. The PCR judge stated that "[b]ased upon the lack of evidence to the contrary, the Court would have to conclude that trial counsel's preparation with his client in a case involving life without parole was inadequate and constitutes ineffective assistance of counsel."

At the PCR hearing, Harris testified he met with trial counsel two or three times prior to the first trial. He also admitted that trial counsel reviewed the discovery materials with him for approximately thirty minutes during his first visit. Harris, however, stated counsel never gave him a copy of these materials. Harris also claimed he did not meet with counsel during the ten days between the mistrial and the second trial and he had no opportunity to discuss trial strategy with counsel prior to the second trial.

In contrast, trial counsel testified he was retained by Harris's family and began preparing for the case in late December 1998 after he mailed a Rule 5 motion to the solicitor's office. After he received the discovery materials, counsel "essentially treated [Harris's mandatory life case] like ... the death penalty appointments [he] had in the past, which is that [he] just put everything else down." Counsel could not recall how many times he met with Harris prior to the first trial; however, he stated "there's no question in my mind that I had completely mastered the defense" and "was prepared on what we had to do on [Harris's] part." Counsel also stated that he went over all the discovery materials with Harris prior to trial. Although counsel could not remember whether he left a copy of the discovery materials with Harris, he testified his routine practice was to leave a copy with his client.

In terms of preparation for the second trial, counsel admitted that he did not meet with Harris between the two trials.

However, he testified he met with the solicitor's office at least three times in an attempt to negotiate a plea agreement for Harris. Counsel also stated that he did not try another case in between the two trials and believed the facts of the case were fresh on his mind during the second trial. He also noted there were no additions to the discovery materials between the first and second trials.

We find the PCR judge's conclusion that trial counsel's preparation was inadequate is not supported by the evidence in the record. Notably, counsel testified he had been practicing law for approximately thirty years and that half of his practice involved criminal cases. Presumably, "counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Ard v. Catoe,* 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007), *cert. denied,* —— U.S. ——, 128 S.Ct. 370, 169 L.Ed.2d 247 (2007).

Additionally, we believe trial counsel's testimony refutes Harris's allegations and directly contradicts the PCR judge's finding. *See Scott v. State,* 334 S.C. 248, 252, 513 S.E.2d 100, 102 (1999) (stating "an appellate court will not affirm the decision when it is not supported by any probative evidence"). First, there is no question that counsel met with Harris on several occasions prior to the first trial. Even if the meetings were brief, this fact alone is not indicative of inadequate trial preparation. *See Easter v. Estelle,* 609 F.2d 756, 759 (5th Cir.1980) (recognizing that brevity of time spent in consultation with defendant, without more, did not establish that trial counsel was ineffective).

Furthermore, Harris did not offer any evidence or argument as to how counsel's alleged lack of preparation prejudiced him. Therefore, it is merely speculative that counsel's alleged deficient performance was prejudicial to Harris. *See Glover v. State,* 318 S.C. 496, 498, 458 S.E.2d 538, 540 (1995) (noting mere speculation and conjecture on the part of Respondent is insufficient to substantiate allegation that counsel's deficient performance was prejudicial to respondent).

Finally, the PCR judge failed to make a finding regarding how the outcome of the trial would have been different had counsel spent more time with Harris or given him a copy of

the discovery materials. *See Jackson v. State,* 329 S.C. 345, 353–54, 495 S.E.2d 768, 772 (1998) (finding PCR judge erred in finding counsel ineffective in preparing respondent's case where respondent failed to show how his counsel's lack of preparation prejudiced him given respondent did not "present any evidence of what counsel could have discovered or what other defenses respondent would have requested counsel pursue had counsel more fully prepared for the trial"); *Davis v. State,* 326 S.C. 283, 288, 486 S.E.2d 747, 749 (1997) (holding record did not support PCR judge's conclusion that counsel's deficient performance was prejudicial to respondent given respondent did not show how additional preparation would have resulted in a different outcome); *Skeen v. State,* 325 S.C. 210, 214, 481 S.E.2d 129, 132 (1997) (finding applicant was not entitled to post-conviction relief where there was no evidence presented at the PCR hearing to show how additional preparation would have had any possible effect on the result of the trial). Accordingly, we hold the PCR judge erred in finding that counsel's preparation was inadequate and constituted a ground for granting Harris post-conviction relief.

## II.

The State argues the PCR judge erred in finding trial counsel was ineffective in failing to obtain a transcript from Harris's first trial in order to impeach witnesses during the second trial. We agree.

Because trial counsel did not obtain the transcript, the PCR judge found counsel could not effectively present Harris's defense at the second trial. In the judge's view, having a copy of the first trial transcript was critical to Harris's defense given: the first case ended in a mistrial; there was not overwhelming evidence of guilt; and there were discrepancies in several witnesses' testimonies presented at the first and second trials.

For several reasons, we conclude the PCR judge erred in granting Harris relief on this ground. As an initial matter, Harris never presented a copy of the transcript at the PCR hearing. Although the audiotapes from the first trial had been destroyed by the time of the hearing, Harris, on at least two occasions, wrote to the Richland County Clerk of Court

approximately one month after his second trial requesting a transcript from each trial. Additionally, we believe Harris's PCR counsel, who was appointed within three years of the mistrial, could have requested the transcript before the audiotapes were destroyed in accordance with the version of Rule 607(i), SCACR, which was in effect at the time of the PCR hearing. *See* Rule 607(i), SCACR ("[A] court reporter shall retain the primary and backup tapes of a proceeding for a period of at least three years (3) after the date of the proceeding, and the court reporter may reuse or destroy the tapes after the expiration of that period.").[3]

Because it was incumbent upon Harris to provide the PCR judge with a copy of the transcript in order to show that he was prejudiced by its absence at the second trial, Harris did not meet his burden to prove that trial counsel was deficient and that the result of his trial would have been different but for this alleged deficiency. It was merely speculative that the transcript would have aided in his defense. *See Palacio v. State*, 333 S.C. 506, 513, 511 S.E.2d 62, 66 (1999) (finding that where contents of challenged documents were not presented at the PCR hearing, defendant failed to present any evidence of probative value demonstrating how counsel's failure to obtain the unproduced documents in a more timely fashion prejudiced his defense); *cf. Porter v. State*, 368 S.C. 378, 386, 629 S.E.2d 353, 358 (2006) ("Mere speculation of what a witness' testimony may be is insufficient to satisfy the burden of showing prejudice in a petition for PCR."); *Dempsey v. State*, 363 S.C. 365, 369, 610 S.E.2d 812, 814 (2005) ("A PCR applicant cannot show that he was prejudiced by counsel's failure to call a favorable witness to testify at trial if that witness does not later testify at the PCR hearing or otherwise offer testimony within the rules of evidence.").

 Even if Harris met his burden to show that counsel was deficient in failing to obtain the transcript, Harris did not prove this alleged deficiency prejudiced his defense. First, trial counsel testified at the PCR hearing that in preparing for the second trial he concentrated on the notes he had from every witness that testified at the first trial, the notes of his

---

3. The current version of Rule 607(i) requires court reporters to retain their tapes for a period of at least five years.

opening statement and closing argument, as well as his notes from his cross-examinations. Because he did not try another case in between Harris's two trials, counsel believed the events of the first trial were fresh in his mind during the second trial. Additionally, counsel explained he did not order the first trial transcript because he did not believe having the transcript would be important in terms of cross-examining the State's witnesses.

In terms of specific testimony, counsel believed the only critical difference in testimony between the two trials was that of Investigator Barnes. Counsel explained that during the first trial, in an in camera hearing, Investigator Barnes was uncertain whether Harris admitted his involvement at the time he revealed the identities of Young and Lewis. In the second trial, Investigator Barnes admitted he made an error in his prior testimony in that he believed Harris did in fact admit to his involvement in the robbery.

In conjunction with this testimony, trial counsel also acknowledged there were differences in Deputy Livingston's testimony during the first and second trials. Counsel, however, emphasized that his cross-examination of Deputy Livingston pointed out the difference in testimony regarding the statement Harris made when he was apprehended by Deputies Livingston and Christophel. In the first trial, Deputy Livingston testified that Harris only stated "You got me;" however, in the second trial, he claimed that Harris stated "You got me. I did it. You got me."

We find the fact that counsel did not obtain a transcript to impeach Livingston and Barnes was inconsequential. Deputy Christophel testified that Harris admitted his involvement in the robbery at the time he was apprehended. Specifically, Deputy Christophel testified that Harris stated, "You've got me. I did it. You got me" at the time he was being handcuffed. Because Deputy Christophel was only called as a witness during the second trial, Harris's counsel could not have impeached him with a prior transcript. Given this testimony was essentially the same as that of Deputies Livingston and Barnes, we find a copy of the transcript was not critical in presenting Harris's defense.

## III.

The State asserts the PCR judge erred in granting relief where Harris was unable to show prejudice from counsel's failure to obtain the transcript due to the overwhelming evidence supporting Harris's guilt. We agree with the State's assertion.

The evidence presented at trial established that Deputies Livingston and Christophel arrived at the scene of the robbery within less than a minute of receiving the 911 dispatch. When they arrived, they observed Harris discard his mask and then flee the scene. The deputies were able to apprehend Harris within minutes at a nearby location. According to Christophel and Livingston, Harris immediately admitted his involvement in the robbery. After being transported to the Richland County Sheriff's Department, Harris again admitted his involvement and identified the names of his accomplices. He also informed the investigators that these individuals drove away from the scene in his car. Harris then gave the investigators the license plate number of the vehicle. Additionally, Stuart Young, one of Harris's accomplices, was arrested while driving Harris's car. Shortly thereafter, Outen selected Young out of a photographic lineup as the man who was not wearing a mask during the robbery. In his written statement and trial testimony, Young implicated Harris in the armed robbery.

Based on the foregoing, we find there was overwhelming evidence of Harris's guilt. Therefore, we hold the PCR judge erred in finding counsel was ineffective in failing to obtain a transcript of the first trial in order to impeach the witnesses. *See Franklin v. Catoe,* 346 S.C. 563, 570 n. 3, 552 S.E.2d 718, 722 n. 3 (2001), *cert. denied,* 535 U.S. 1114, 122 S.Ct. 2332, 153 L.Ed.2d 162 (2002) (finding overwhelming evidence of guilt negated any claim that counsel's deficient performance could have reasonably affected the result of defendant's trial); *Geter v. State,* 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt); *cf. Ford v. State,* 314 S.C. 245, 248, 442 S.E.2d 604, 606 (1994) (holding respondent failed to prove prejudice from trial counsel's fail-

ure to request an alibi charge where there was overwhelming evidence of guilt).

## IV.

The State argues the PCR judge erred in granting a new trial based on the State's failure to provide Harris with written notice of its intention to seek a LWOP sentence. We agree with the State.

In ruling that Harris's sentence was void, the PCR judge relied on the Court of Appeals' decision in *State v. Johnson*, 347 S.C. 67, 552 S.E.2d 339 (Ct.App.2001). In *Johnson*, the Court of Appeals interpreted the requirements of imposing a sentence under section 17–25–45. The court found that a LWOP sentence could not be imposed unless written notice of intent to seek this sentence was given to both the defendant and defense counsel. Recently, this Court overruled *Johnson* in *James v. State*, 372 S.C. 287, 641 S.E.2d 899 (2007), and held that at least ten days' actual notice is all that is required to impose a LWOP sentence.

In the instant case, Harris had at least ten days' actual notice of the potential LWOP sentence. Prior to his second trial, the trial judge informed Harris that he would receive a mandatory LWOP sentence if convicted. Harris acknowledged that a LWOP sentence would be imposed. Shortly thereafter, Harris moved to have his trial counsel relieved. As the basis for this motion, Harris expressed concern with counsel's representation given he was "facing a life sentence." Additionally, at sentencing the solicitor entered into evidence a copy of the State's Notice of Intent to Seek Life without Parole, which had been filed on February 26, 1999. The filing of this notice was well in advance of Harris's two trials, which were conducted on March 15, 1999, and March 30, 1999. Moreover, at the PCR hearing, trial counsel testified that he had received a copy of the State's LWOP notice and that it was part of his file. Although he did not know for certain whether Harris received a copy of the State's LWOP notice, trial counsel testified there was "[n]o question he was informed from the get-go that he was facing life imprisonment, mandatory." Accordingly, we find the PCR judge erred in holding Harris's LWOP sentence was void. *See Sheppard v.*

*State,* 357 S.C. 646, 651, 594 S.E.2d 462, 465 (2004) (noting this Court will reverse the PCR court's decision when it is controlled by an error of law); *see also Scott v. State,* 334 S.C. 248, 252, 513 S.E.2d 100, 102 (1999) (stating "an appellate court will not affirm the decision when it is not supported by any probative evidence"); *Dempsey v. State,* 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005) (A PCR court's findings will be upheld on appeal if there is "any evidence of probative value sufficient to support them.").

## CONCLUSION

In view of the foregoing, we hold the PCR judge erred in granting Harris's application for post-conviction relief. Accordingly, we reverse the order of the PCR judge.

**REVERSED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.