745 S.E.2d 378

**Marlon Jermaine SMITH, Petitioner,**

**v.**

**STATE of South Carolina, Respondent.**

**No. 4938.**

Court of Appeals of South Carolina.

Heard Oct. 20, 2011.

Decided Feb. 8, 2012.

494

Appellate Defenders M. Celia Robinson and Breen Stevens, of Columbia, for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley Elliott, Assistant Attorney General Christina J. Catoe, all of Columbia, for Respondent.

HUFF, J.

Petitioner, Marlon Jermaine Smith, was convicted of armed robbery and use of a deadly weapon during the commission of a violent crime. The trial court imposed a sentence of twenty-two years for armed robbery, and a concurrent five-year sentence for the weapon charge. This court granted certiorari to review petitioner's belated appeal from the denial of his application for post-conviction relief (PCR). Petitioner asserts the PCR judge erred in denying and dismissing his claims of ineffective assistance of trial counsel because trial counsel failed to (1) adequately communicate with petitioner, (2) interview or present the testimony of witnesses, and (3) advise petitioner to testify in his defense. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Petitioner was charged with armed robbery and use of a deadly weapon during a violent crime stemming from his alleged participation in the robbery of a Best Western Hotel.

The desk clerk at the motel testified that while she was working on October 7, 1998, two men rushed in with guns and took a money bag and a cell phone, along with her purse. The clerk described one of the men as being about 5'4" or 5'5", and the other as being taller and bigger. Shortly after reporting the incident, the clerk was taken to another location, and officers separately pulled three individuals from police cars for the clerk to view, placing a spotlight on each. The clerk did not recognize the first individual, but recognized the second individual by his clothes and build. When the third individual was brought out, the clerk "knew it was him" from the time she "saw him and heard him." This person was around 5'4" in height, and she recognized his voice from the robbery. She was also able to identify him because of his clothes. The clerk identified petitioner as this third individual, and stated there was no doubt in her mind when she identified him. When the clerk identified petitioner to the police, she had a strong reaction, crying and attempting to get away by exiting the police car, stating she was afraid he was going to kill her.

After a dispatch was issued concerning the robbery at the Best Western, the police stopped a vehicle that was driven by petitioner and occupied by two passengers. Petitioner told the police that he was simply giving the two passengers a ride. One of the passengers, Cohiese Prince, told the police he "did not rob that motel." When asked what motel he was referring too, Prince became visibly nervous. The other passenger, a juvenile named Demetris, fled into a nearby wooded area and was subsequently apprehended. Demetris then led officers to a bush, where he had placed two hand guns and a phone belonging to the motel. Petitioner, who was also the owner of the car, gave officers permission to search the vehicle. The officers found a bank bag full of money and the clerk's purse in the trunk of the car. When asked, petitioner denied that anyone else had been driving the car or had the keys to his car or had been in the trunk of his car that night. Testimony revealed petitioner was five feet and four inches tall, while Prince was six feet and one inch and Demetris was six feet tall.

Prince, who is petitioner's cousin and who was initially to be tried along with petitioner, pled guilty to this robbery on the morning of the trial. Prince then testified on petitioner's

behalf at the trial claiming he and Demetris committed the armed robbery, and though petitioner drove them to the Best Western, he was unaware that Prince and Demetris planned to rob the motel. According to Prince, petitioner was supposed to go pick up petitioner's brother from work. Trial counsel also presented petitioner's brother, John Gause, as a witness. Gause testified that on the night of the incident, he asked petitioner to pick him up from work, but petitioner never showed. Although petitioner initially indicated to the court that he wished to testify on his own behalf, petitioner did not, in fact, take the stand, and the defense rested after presenting the testimony of Gause and Prince.

In closing arguments, the defense attacked the eyewitness identification of petitioner by the clerk, noting that the clerk's written statement to police shortly after the incident indicated the two gunmen were both of average height, whereas her testimony on the stand was distinctly different, and further maintained that Prince's testimony supported their defense that petitioner simply gave Prince and Demetris a ride and was unaware of the robbery. The State argued there were three possible scenarios for the jury to consider: (1) that Prince and Demetris robbed the hotel and petitioner knew nothing about it, (2) that Prince and Demetris robbed the hotel, but petitioner knew about the robbery and was in on the plan, or (3) the clerk properly identified petitioner as one of the two men who robbed her at gunpoint. The jury convicted petitioner as charged.

Following his direct appeal, petitioner filed an application for PCR, which was denied and dismissed by Judge Thomas. Petitioner thereafter sought review of the denial of PCR pursuant to *Austin v. State*, 305 S.C. 453, 409 S.E.2d 395 (1991), alleging ineffective assistance of his original PCR counsel in failing to seek review. Judge Baxley issued a consent order for an *Austin* review; petitioner submitted a petition for writ of certiorari; and this court subsequently granted the writ of certiorari.

## ISSUE

Petitioner contends the PCR judge improperly denied and dismissed his application, asserting the result of the proceeding and his right to a fair trial were cast in doubt by the

ineffective assistance of trial counsel in that trial counsel (1) failed to adequately communicate with him, (2) failed to interview or present the testimony of witnesses, and (3) failed to advise petitioner to testify in his defense.

## STANDARD OF REVIEW

Under the Sixth Amendment to the United States Constitution, a defendant has the right to the effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 684–86, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Lomax v. State,* 379 S.C. 93, 100, 665 S.E.2d 164, 167 (2008). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Ard v. Catoe,* 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007). The burden of proof is on the applicant in a PCR proceeding to prove the allegations in his application. *Id.* "On appeal, the PCR court's ruling should be upheld if it is supported by any evidence of probative value in the record." *Simuel v. State,* 390 S.C. 267, 270, 701 S.E.2d 738, 739 (2010).

> To establish a claim of ineffective assistance of counsel, the PCR applicant must prove: (1) counsel's performance fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant's case. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." To establish prejudice, the defendant is required "to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Smith v. State,* 386 S.C. 562, 565–66, 689 S.E.2d 629, 631 (2010) (citing to and quoting from *Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674).

## LAW/ANALYSIS

### I. Failure to Communicate

In regard to petitioner's allegation that trial counsel failed to adequately consult with him and prepare his case, the PCR

judge noted that brevity of time spent in consultation, without more, is insufficient to establish ineffective assistance of counsel, and petitioner failed to point to any specific matters counsel failed to discover, aside from other allegations of ineffective assistance of counsel, for which the court found no merit.

Petitioner contends the PCR court erred in dismissing and denying his application for relief, asserting the result of the proceeding and his right to a fair trial were cast in doubt by the ineffective assistance of trial counsel in that trial counsel failed to adequately communicate with his client. Petitioner argues that during the hearing, trial counsel confirmed that he met with petitioner only twice, once prior to trial and then again on the day of the trial. Trial counsel also admitted that he would have had to have discussed discovery with petitioner immediately prior to the trial. Petitioner also contends trial counsel only took about five to ten minutes to explain to him that he should not testify. Accordingly, petitioner maintains that as a result of trial counsel's failure to adequately communicate with him, trial counsel was not sufficiently familiar with petitioner's version of events to defend against the armed robbery charge, counsel did not prepare petitioner to testify, petitioner was not prepared to examine Prince in depth, and counsel failed to call petitioner's character witnesses to testify.

We find petitioner failed to demonstrate that trial counsel's preparation and communication with him was inadequate, and further failed to offer any evidence or argument as to how counsel's alleged lack of preparation or communication prejudiced him. At the PCR hearing, trial counsel testified in regard to his trial preparation that he had a taped statement from Demetris and, even though petitioner's and Prince's defenses were somewhat antagonistic toward each other, he was in contact with Prince's attorney on several occasions and they were able to work together. He did not inform the Solicitor's office of the possibility that a co-defendant might testify that petitioner did not commit the robbery because it was not until Prince pled guilty that morning that such information arose. Thus, trial counsel did not anticipate any testimony from Prince. Trial counsel stated he reviewed the co-defendants' statements prior to trial, spoke with Prince's attorney, discussed the State's plea offer with petitioner, filed

for discovery, and reviewed the discovery material with petitioner prior to trial. Trial counsel also spoke with petitioner's mother concerning petitioner's defense, and arranged for a polygraph examination of petitioner. He further acknowledged that he reviewed the discovery material with petitioner immediately prior to trial, and that petitioner was able to read the discovery material; he talked with petitioner about the material and made him aware of the State's evidence; petitioner was able to tell counsel his differing version of the facts; and petitioner seemed to understand the material. Additionally, trial counsel did not feel like he needed a continuance, but felt he was prepared to go to trial. Further, the record shows the trial judge informed petitioner of his right to testify or not testify, and petitioner agreed with the trial judge that he had discussed this right with trial counsel. The trial judge then allowed a ten minute break for petitioner to further discuss the matter with counsel. Finally, petitioner testified at his PCR hearing that there was nothing he could think of that was requested of trial counsel that counsel did not do for petitioner.

Thus, the uncontradicted evidence in the record shows that counsel met with petitioner prior to trial, discussed the discovery materials with him, and provided petitioner the opportunity to explain his version of the events. Counsel further prepared for the defense by arranging a polygraph examination and meeting with petitioner's mother to discuss the incident and petitioner's defense. Counsel also consulted with petitioner throughout the two day trial. Additionally, the record reflects petitioner indicated to the trial court that he had discussed with trial counsel the right to testify, and the trial court thereafter gave petitioner an additional ten minutes to discuss his decision with trial counsel. The brevity of time spent in consultation with a defendant alone is not indicative of inadequate trial preparation. *Harris v. State*, 377 S.C. 66, 75, 659 S.E.2d 140, 145 (2008). Additionally, petitioner did not offer any evidence of how additional preparation or communication would have resulted in a different outcome. *See Jackson v. State*, 329 S.C. 345, 353–54, 495 S.E.2d 768, 772 (1998) (where PCR applicant failed to present any evidence of what counsel could have discovered or what other defenses he would have requested counsel pursue had counsel more fully

prepared for the trial, applicant failed to show his counsel's lack of preparation prejudiced him); *Skeen v. State*, 325 S.C. 210, 214–15, 481 S.E.2d 129, 132 (1997) (finding applicant was not entitled to post-conviction relief where there was no evidence presented at the PCR hearing to show how additional preparation would have had any possible effect on the result of the trial).

## II. Failure to Interview and Present Witnesses

On the issue of failure to call witnesses, the PCR judge held prejudice from trial counsel's failure to interview or call witnesses cannot be shown where the witnesses did not testify at the PCR hearing, and petitioner's mere speculation as to what a witness' testimony would have been could not satisfy his burden of showing prejudice.

Petitioner contends the PCR judge erred in denying and dismissing his application for PCR based on trial counsel's failure to interview his codefendant or call his character witnesses to testify at trial. He argues, as a result of Prince's testimony, the State altered its theory of the case, switching from relying on the clerk's identification of petitioner to proposing that petitioner was merely "driving the get-away car" and must have been aware the robbery was taking place. Petitioner contends, because trial counsel failed to interview Prince prior to trial, he was not prepared for the change in the State's theory and was thus able to perform only a limited examination of Prince and made no attempt to blunt the prosecution's response that Prince and petitioner were "family." Petitioner further contends trial counsel failed to call petitioner's character witnesses to the stand, even though he had asked counsel to speak with them and they were present in the courtroom at the time of his trial. Petitioner argues, although these character witnesses did not testify at the PCR hearing, at least one of the character witnesses was present at the PCR hearing. Petitioner asserts the substance of the character witnesses' testimony should be presumed.

Rule 4.2 of the Rules of Professional Conduct, Rule 407, SCACR provides as follows:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the

lawyer knows to be represented by another lawyer in the matter unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Thus, trial counsel properly communicated with Prince's attorney during the pre-trial phase. Further, trial counsel testified at the PCR hearing that just prior to Prince's testimony, once he decided to plead guilty, counsel met with Prince and the solicitor to discuss Prince's statement that petitioner was not involved in the robbery. All indications were that Prince decided to take a plea agreement at the last minute, and it was not until then that trial counsel was able to learn that Prince would testify petitioner was unaware of the robbery. Once counsel learned of this change, he called Prince to testify on petitioner's behalf. Additionally, petitioner failed to present any testimony from Prince at the PCR hearing to establish prejudice from any inadequate questioning of Prince at trial. Further, there is nothing in the record to indicate that interviewing Prince prior to Prince's guilty plea would have led to any different result. *See Moorehead v. State*, 329 S.C. 329, 334, 496 S.E.2d 415, 417 (1998) (holding, where there was nothing in the record to indicate that interviewing the victims would have led to any different result, trial counsel's failure to conduct an independent investigation did not constitute ineffective assistance of counsel, as the allegation was supported only by mere speculation as to the result).

As well, petitioner failed to present any testimony from the alleged character witnesses at the PCR hearing in order to establish prejudice from the lack of testimony of these witnesses at trial. Thus, petitioner failed to show trial counsel's actions or inactions resulted in prejudice. *See Bannister v. State*, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (noting our courts have "repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial"); *Glover v. State*, 318 S.C. 496, 499, 458 S.E.2d 538, 540 (1995) (holding a PCR applicant's mere speculation as to what the witnesses' testimony would have been cannot, by itself, satisfy the burden of showing prejudice).

## III. Failure to Advise Petitioner to Testify

Petitioner's PCR application alleged numerous grounds to support his assertion of ineffective assistance of trial counsel but, notably, did not specifically assert counsel was ineffective in advising petitioner not to testify at trial. Rather, in regard to the presentation of witness testimony, petitioner simply maintained that trial counsel "presented no witnesses on [his] behalf, not even a character witness." At the PCR hearing, the judge asked PCR counsel to specify what allegations of ineffective assistance were being made so the court would know what allegations had been abandoned. PCR counsel then outlined the various allegations contained in petitioner's application, again maintaining trial counsel "presented no witnesses on [petitioner's] behalf, not even a character witness," but PCR counsel failed to specifically assert error in trial counsel's advice to petitioner that he not testify. During the PCR hearing, however, PCR counsel questioned trial counsel as to how many witnesses he called on behalf of petitioner, and trial counsel incorrectly stated he called no defense witnesses, including petitioner. PCR counsel thereafter asked trial counsel how many witnesses the State called, to which counsel replied that the State had called eleven witnesses, and agreed with PCR counsel that zero witnesses had been called on behalf of petitioner. However, a review of the trial transcript reveals that the State called nine witnesses to testify before the jury, and trial counsel called two witnesses; petitioner's brother, John Gause, and co-defendant Prince. Based on this misapprehension that the defense called no witnesses, trial counsel testified that he advised petitioner against testifying at his trial in order to "preserve the last close in this case." Counsel noted that the clerk's written statement regarding the height description of the two robbers differed from her trial testimony, but he believed he could illustrate that point without having petitioner testify. Trial counsel also testified he discussed with petitioner the strategy of not calling petitioner to the stand in order to maintain last argument, but also discussed with petitioner "the dangers, the advantages and disadvantages of him testifying."

Petitioner testified at the hearing that he thought the outcome of his trial would have been different had he been able to tell the jury what happened that night, and one of his

bases for a new trial was that trial counsel advised him not to testify. In his summation to the court, PCR counsel argued that the State called eleven witnesses, while trial counsel called zero witnesses in petitioner's defense. PCR counsel further maintained, given the way the State had to change gears during the trial, that petitioner "could have shed some light on the fact that maybe it wasn't him," creating doubt for the jury that ultimately convicted petitioner. Importantly, no one corrected the misapprehension that the defense presented no witnesses and was thereby able to present the last closing argument.

In her order of dismissal, the PCR judge addressed several allegations raised by petitioner, but did not specifically address whether trial counsel was ineffective for advising petitioner not to testify at trial or whether petitioner was prejudiced thereby. However, the following language was included in the order:

> As to any and all allegations which were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds that the applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds that the applicant waived such allegations and failed to meet his burden of proof regarding them.
>
> ... Therefore, any and all allegations not specifically addressed in this Order are hereby denied and dismissed.

Petitioner asserts the PCR judge erred in denying and dismissing his application for PCR where the result of the proceedings and his right to a fair trial were cast in doubt by ineffective assistance of trial counsel in that trial counsel advised petitioner not to testify in his own defense. He contends trial counsel acknowledged that petitioner was intelligent enough to testify at trial, and that, in retrospect, putting petitioner on the stand "could have made a difference." Most importantly, petitioner argues trial counsel's explanation that he made a strategic decision to forgo the benefit of petitioner's testimony in exchange for the right to last argument was objectively unreasonable and established counsel's assistance was ineffective because trial counsel did, in fact, call witnesses to the stand and the defense was not afforded the last

argument. Petitioner maintains that, but for trial counsel's ineffective performance in advising petitioner not to testify in his defense, the result of the proceeding would very likely have been different.

■ We agree with the State's contention that this issue is not preserved for review. It is clear that the PCR court did not rule on petitioner's assertion at the PCR hearing that he was entitled to a new trial based on trial counsel's advice that he not testify. Additionally, there is no indication in the record that petitioner filed a Rule 59(e) SCRCP, motion to address the matter. Our supreme court has made it abundantly clear that, where a PCR court fails to set forth findings and the reasons for those findings, the issue is not preserved for appellate review if the petitioner fails to make a Rule 59(e) motion requesting the PCR court make specific findings of fact and conclusions of law on the allegations. *Marlar v. State*, 375 S.C. 407, 408–10, 653 S.E.2d 266, 266–67 (2007). The court in *Marlar* noted that "[p]ursuant to S.C.Code Ann. § 17–27–80 (2003), the PCR judge must make specific findings of fact and state expressly the conclusions of law relating to each issue presented," and the failure to specifically rule on the issues precludes appellate review of the issues. *Id.* at 408, 653 S.E.2d at 266. Further, the court in *Marlar* held language in the PCR court's order similar to that contained in the order at hand-providing that as to any allegations raised in the application or at the hearing not specifically addressed by the PCR order, the PCR court found that the applicant failed to present any evidence regarding such allegations—did not constitute a sufficient ruling on any issues since it did not set forth specific findings of fact and conclusions of law. *Id.* at 409, 653 S.E.2d at 266. Thus, this language in the order in the present matter is not sufficient to preserve the issue for review. Accordingly, we hold this issue is not preserved for review, as the PCR court did not rule on the matter and petitioner failed to make a Rule 59(e), SCRCP motion to alter or amend the judgment to include specific findings of fact and conclusions of law. At any rate, this argument is also not preserved inasmuch as it was not raised to or ruled upon by the PCR judge. Petitioner did not argue to the PCR court, as he does on appeal, that counsel's advice to forego testifying in order to gain last argument was not objectively reasonable

and fell far below the professional standard where counsel did not, in fact, make the last argument. Indeed, the fact that trial counsel called two witnesses to the stand for the defense and that he was therefore not afforded the last closing argument was never brought to the PCR court's attention. *See Kolle v. State*, 386 S.C. 578, 589, 690 S.E.2d 73, 79 (2010) (noting an issue that was neither raised to nor ruled upon by the PCR court is not preserved for appellate review); *State v. Freiburger*, 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (finding argument advanced on appeal was not raised and ruled on below and therefore was not preserved for review).

## CONCLUSION

Based on the foregoing reasons, the order denying petitioner's PCR application is

**AFFIRMED.**

PIEPER and LOCKEMY, JJ., concur.