# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Stephen Smalls, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2016-001079

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
Henry F. Floyd, Trial Court Judge
J. Ernest Kinard Jr., Post-Conviction Relief Judge

---

Opinion No. 27764
Heard November 14, 2017 – Filed February 7, 2018

---

## REVERSED

---

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Jessica Elizabeth Kinard, both of Columbia, for Respondent.

---

**JUSTICE FEW:** In this post-conviction relief (PCR) case, we agree with the court of appeals' finding that trial counsel was deficient, but disagree that the State presented overwhelming evidence of guilt that precluded a finding of prejudice under the second prong of *Strickland v. Washington*. We find the evidence was not overwhelming, and reverse the court of appeals' finding that counsel's errors resulted in no prejudice.

## I.        Facts and Procedural History

At almost midnight on May 21, 2000, Jim Lightner and Eugene Green were closing the Bojangles restaurant on Elmwood Avenue in Columbia when a man charged in the door wielding a shotgun.  The man forced Lightner to the back of the restaurant to open the safe.  When they went to the back, Green escaped out the front door and ran across Elmwood to a gas station to call the police.  While Green was on the phone with police, he saw the man walk out the side service door of the Bojangles carrying the shotgun in one hand and a white bag in the other.  The man walked out of a wooden gate near the back of the parking lot just as a police cruiser pulled up to the front of the Bojangles.  Green told the police to "make a left at the Lizard's Thicket," which would take the officer to where the man exited the wooden gate.  When Green saw the cruiser make the left, he said "you got him."  Although the officers were unable to find the suspect at that time, they did find a twelve-gauge pump-action shotgun and a white bag containing $1,900 just outside the gate.

Two fingerprint experts later examined the shotgun and determined that one of several prints on the gun belonged to Smalls.  After securing a warrant for Smalls' arrest, Investigator Joe Gray drove to Smalls' house.  When he saw Smalls walking down a nearby street carrying a child in his arms, Gray stepped out of his vehicle and asked Smalls about the robbery of the Bojangles.  Gray testified Smalls "dropped the child" and "began running."  Another officer found Smalls later that evening hiding in bushes a few blocks away.

Investigator Paul Mead prepared a photographic lineup that he presented to Lightner. Investigator Gray presented the same lineup to Green.  Four days after the robbery, Green identified Smalls.  Lightner, however, could not identify Smalls, but did narrow the suspects down to two people, one of whom was Smalls.

At trial in May of 2002, the State introduced Green's pretrial identification of Smalls. Green testified and identified Smalls in the courtroom.  The State introduced the fact Lightner narrowed the suspects down to Smalls and one other person.  Investigator Gray identified Smalls as the person who dropped the child and ran when he was asked about the robbery.  Both fingerprint experts testified one of the fingerprints on the shotgun belonged to Smalls.  The jury convicted Smalls of armed robbery, and the trial court sentenced him to twenty-five years in prison.  The court of appeals dismissed his appeal in an unpublished opinion. *State v. Smalls*, Op. No. 2004-UP-315 (S.C. Ct. App. filed May 13, 2004).

Smalls filed an application for PCR alleging he received ineffective assistance of counsel. The PCR court first held a hearing in 2007. The court held the record open to allow PCR counsel time to investigate the circumstances under which the State dismissed a carjacking charge against Green on the morning of Smalls' trial. The hearing was not reconvened until 2012. The PCR court described the issue regarding the carjacking charge as not only one of ineffective assistance of counsel, but also whether "the State was deceptive" in representations made to the trial court and trial counsel.[1] The PCR court denied relief.

We transferred Smalls' petition for a writ of certiorari to the court of appeals pursuant to Rule 243(l) of the South Carolina Appellate Court Rules, and the court of appeals granted the petition. The court of appeals then found trial counsel's performance was deficient regarding the carjacking charge and in two other instances. *Smalls v. State*, 415 S.C. 490, 498-501, 783 S.E.2d 817, 820-22 (Ct. App. 2016). However, the court of appeals found "there was no prejudice resulting from trial counsel's deficient performance because the State presented overwhelming evidence of [Smalls'] guilt." 415 S.C. at 501, 783 S.E.2d at 822. Smalls filed a petition for a writ of certiorari, which we granted.

## II.    Standard of Review

Our standard of review in PCR cases depends on the specific issue before us. We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them. *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016) (citing *Jordan v. State*, 406 S.C. 443, 448, 752 S.E.2d 538, 540 (2013)). We review questions of law de novo, with no deference to trial courts.[2] *Sellner*, 416 S.C.

---

[1] The PCR court did not make a ruling on the misrepresentation issue and neither party briefed the issue to the court of appeals or this Court.

[2] In numerous cases, this Court has incorrectly stated an appellate court "gives great deference to the PCR court's . . . conclusions of law." *See, e.g.*, *Porter v. State*, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). The court of appeals repeated our misstatement, quoting *Porter*. *Smalls*, 415 S.C. at 496, 783 S.E.2d at 820. We clarify that appellate courts review questions of law de novo, with no deference to trial courts. While we uphold the analysis and result of the following decisions, we now direct that none of these decisions should be read to suggest an appellate court gives any deference to a PCR court's conclusions of law: *Gonzales v. State*, 419 S.C. 2, 10, 795 S.E.2d 835, 839 (2017); *Gibbs v. State*, 416 S.C. 209, 218, 785 S.E.2d 455, 459 (2016); *McHam v. State*, 404 S.C. 465, 473, 746 S.E.2d 41, 45 (2013);

at 610, 787 S.E.2d at 527 (citing *Jamison v. State*, 410 S.C. 456, 465, 765 S.E.2d 123, 127 (2014)).

## III. Deficient Performance

To prove trial counsel's performance was deficient, an applicant must show "counsel's representation fell below an objective standard of reasonableness." *Williams v. State*, 363 S.C. 341, 343, 611 S.E.2d 232, 233 (2005) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2064, 80 L. E. 2d 674, 693 (1984)). The court of appeals held trial counsel's performance fell below this standard as to three separate instances. First, trial counsel did not effectively argue that the existence and dismissal of Green's carjacking charge was admissible as evidence of Green's bias. Second, trial counsel did not object to the State's question to Investigator Mead suggesting Smalls burglarized someone's home to obtain the shotgun. Third, trial counsel did not challenge the State's statement during opening that the police saw Smalls leaving the Bojangles.

---

*Hyman v. State*, 397 S.C. 35, 42, 723 S.E.2d 375, 378 (2012); *Holden v. State*, 393 S.C. 565, 573, 713 S.E.2d 611, 615 (2011); *Edwards v. State*, 392 S.C. 449, 455, 710 S.E.2d 60, 64 (2011); *Robinson v. State*, 387 S.C. 568, 574, 693 S.E.2d 402, 405 (2010); *Kolle v. State*, 386 S.C. 578, 589, 690 S.E.2d 73, 79 (2010); *Terry v. State*, 383 S.C. 361, 371, 680 S.E.2d 277, 282 (2009); *Jones v. State*, 382 S.C. 589, 595, 677 S.E.2d 20, 23 (2009); *Davie v. State*, 381 S.C. 601, 608, 675 S.E.2d 416, 420 (2009); *Miller v. State*, 379 S.C. 108, 115, 665 S.E.2d 596, 599 (2008); *Lomax v. State*, 379 S.C. 93, 100, 665 S.E.2d 164, 167 (2008); *Harris v. State*, 377 S.C. 66, 73, 659 S.E.2d 140, 144 (2008); *Lorenzen v. State*, 376 S.C. 521, 529, 657 S.E.2d 771, 776 (2008); *Smith v. State*, 375 S.C. 507, 515, 654 S.E.2d 523, 528 (2007); *Watson v. State*, 370 S.C. 68, 71, 634 S.E.2d 642, 643 (2006); *Porter*, 368 S.C. at 383, 629 S.E.2d at 356; *Simpson v. Moore*, 367 S.C. 587, 595, 627 S.E.2d 701, 705 (2006); *Bright v. State*, 365 S.C. 355, 358, 618 S.E.2d 296, 298 (2005); *Winns v. State*, 363 S.C. 414, 417, 611 S.E.2d 901, 903 (2005); *Dempsey v. State*, 363 S.C. 365, 368, 610 S.E.2d 812, 814 (2005); *Sellers v. State*, 362 S.C. 182, 187, 607 S.E.2d 82, 84 (2005); *Magazine v. State*, 361 S.C. 610, 615, 606 S.E.2d 761, 763 (2004); *Huggler v. State*, 360 S.C. 627, 632, 602 S.E.2d 753, 756 (2004); *Green v. State*, 351 S.C. 184, 192, 569 S.E.2d 318, 322 (2002); *Caprood v. State*, 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000).

## A.    Dismissal of Green's Carjacking Charge

During a pretrial hearing on the morning of trial, the solicitor asked the trial court to make preliminary rulings on whether Green's prior convictions would be admissible to impeach him under Rule 609 of the South Carolina Rules of Evidence.  The trial court ruled Green's convictions for distribution of crack cocaine, use of vehicle without owner's consent, and possession of a stolen motor vehicle were admissible.  Trial counsel then asked about the pending carjacking charge, "He has a pending charge, Your Honor, but I don't know if I am allowed to go into that."  The solicitor informed the trial court that Green's carjacking charge had been dismissed that morning.  Apparently not recognizing that the dismissal of the charge was potentially stronger evidence of bias than the charge itself, trial counsel raised no further argument on the issue, and did not ask the trial court to make a ruling as to whether counsel would be permitted to use the carjacking charge or its dismissal to impeach Green.[3]

Evidence of a witness's bias can be compelling impeachment evidence, and for that reason "considerable latitude is allowed" to defense counsel in criminal cases "in the cross-examination of an adverse witness for the purpose of testing bias." *State v. Brown*, 303 S.C. 169, 171, 399 S.E.2d 593, 594 (1991).  Our courts have followed the "general rule" that "'anything having a legitimate tendency to throw light on the accuracy, truthfulness, and sincerity of a witness may be shown and considered in determining the credit to be accorded his testimony,'" so that "'on cross-examination, any fact may be elicited which tends to show interest, bias, or partiality' of the witness." *State v. Brewington*, 267 S.C. 97, 101, 226 S.E.2d 249, 250 (1976) (quoting 98 C.J.S. *Witnesses* §§ 460, 560a).  "Rule 608(c) [of the South Carolina Rules of Evidence] 'preserves [this longstanding] South Carolina precedent.'" *State v. Sims*, 348 S.C. 16, 25, 558 S.E.2d 518, 523 (2002) (quoting *State v. Jones*, 343 S.C. 562, 570, 541 S.E.2d 813, 817 (2001) and citing *Brewington*, 267 S.C. at 101,

---

[3] At the PCR trial, trial counsel testified she argued to the trial court in chambers that she should be allowed to impeach Green with the fact the charge was dismissed, and the trial court ruled she could not.  Such a conference is meaningless in this appeal.  When a conference takes place off the record, it is trial counsel's duty to put the substance of the discussion and the trial court's ruling on the record. *See Foye v. State*, 335 S.C. 586, 590, 518 S.E.2d 265, 267 (1999) (finding trial counsel was deficient for failing to place his argument about the jury seeing his client in chains on the record, and thus failing to adequately preserve the issue for appeal).

226 S.E.2d at 250). *See* Rule 608(c), SCRE ("Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced.").

In *Sims*, decided three months before Smalls' trial, we discussed the use of pending charges as evidence of bias to impeach a State's witness. 348 S.C. at 23-26, 558 S.E.2d at 522-23. We stated, "There was the substantial possibility [the witness with pending charges] would give biased testimony in an effort to have the solicitor highlight to his future trial judge how he had cooperated . . . ." 348 S.C. at 25, 558 S.E.2d at 523. In this case, the fact Green faced charges for carjacking is evidence of his bias for the reasons we explained in *Sims*. In most circumstances, a trial court would admit evidence of the charge. *See State v. Dial*, 405 S.C. 247, 256, 746 S.E.2d 495, 499-500 (Ct. App. 2013) (recognizing trial courts have wide discretion in admitting evidence of bias). Smalls' counsel not only failed to attempt to cross-examine Green with evidence of these charges, but erroneously believed the State's dismissal of the charges eliminated the tendency of the evidence to show Green's bias. If the mere existence of the charge made it likely Green would give biased testimony, as we explained in *Sims*, the dismissal of the charge made the likelihood of bias manifest—because Green actually received the benefit he hoped the solicitor would provide in exchange for his cooperation.

The fact Green faced a carjacking charge that was dismissed on the morning of trial was strong evidence of Green's bias, and counsel's failure to cross-examine him on this point fell well below the "objective standard of reasonableness" by which we judge the performance of counsel. *Williams*, 363 S.C. at 343, 611 S.E.2d at 233. The magnitude of counsel's deficiency did not become clear, however, until the PCR trial was reconvened in 2012. Green testified he had been in jail awaiting trial on the carjacking charge in the weeks before Smalls' trial. Green explained that on two occasions the solicitor brought him to the courthouse and "asked [him] to be a cooperating witness and testify against Mr. Smalls." According to Green, he told the solicitor he did not want to cooperate because "I didn't want anything to do with it." Recalling his conversation with the solicitor, Green testified, "He was like if I didn't come . . . to participate in the trial that my charge wasn't going to go anywhere. . . . Like I still was going to be charged with the [carjacking]." Then, "a couple of days before" Smalls' trial, according to Green, he was released on a personal recognizance bond. The charge was dismissed the morning of trial, and Green testified against Smalls. PCR counsel asked Green at the 2012 hearing, "Would you have testified in the case against Stephen Smalls if you had not been told that your carjacking charge would not be dismissed if you didn't," and he responded, "No. Because I didn't want anything to do with it."

If trial counsel had attempted to cross-examine Green on the carjacking charge, she would have demonstrated that the State dismissed a charge that carried up to twenty years in prison[4] on the morning of trial in an apparent effort to secure Green's favorable testimony. If the trial court ruled against her, she was required to make a proffer. *See State v. Schmidt*, 288 S.C. 301, 303, 342 S.E.2d 401, 402-03 (1986) (stating "this Court will not review alleged error of the exclusion of testimony unless a proffer of testimony is properly made on the record"). In either circumstance, it is reasonably possible Green would have admitted—as he did at the PCR trial—the State made him a deal that handsomely rewarded him for his cooperation. Even if Green did not admit that, trial counsel should have forced the solicitor to disclose the terms of any deal he made with Green. *See State v. Hinson*, 293 S.C. 406, 408, 361 S.E.2d 120, 120 (1987) ("'When the reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of a promise of immunity made to that witness is a violation of due process." (quoting *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104, 108 (1972))). The court of appeals was correct to find trial counsel was deficient in handling the carjacking charge.

### B.    Prior Burglary

In an effort to show an innocent explanation for Smalls' fingerprint on the shotgun, trial counsel cross-examined Investigator Mead as follows,

> Q:    Was the gun stolen? Had it been stolen?
>
> A:    It was.
>
> . . . .
>
> Q:    How long before had that gun been stolen?
>
> A:    It was taken in a burglary of the individual's residence. The gun was reported stolen on August 28, 1999.
>
> . . . .

---

[4] S.C. Code Ann. § 16-3-1075(B)(1) (2015).

Q:    So a little less than a year before this occurred?

A:    Yes, ma'am.

Q:    Do you know if that case was ever solved?

A:    To my knowledge, no.

The State responded on redirect,

Q:    Investigator Mead, first with regards to the shotgun, you were asked where it originally came from?

A:    Yes, sir.

Q:    To make it perfectly clear, [the shotgun] wasn't stolen from the defendant's house in 1999?

A:    No, it was not.

Q:    *He burglarized somebody else's house?*

A:    *That's correct.*

Q:    So is there any reason why his fingerprint would be on this weapon –

A:    Not that I know of, sir.

Q:    – other than he robbed the Bojangles?

A:    That's correct.

The State's overall line of questioning on redirect appears to have been offered for the legitimate purpose of refuting defense counsel's suggestion of an innocent explanation for the fingerprint. However, the question, "He burglarized somebody else's house," and the answer "That's correct," did not serve any legitimate purpose. Rather, it was an improper effort to introduce evidence that Smalls committed another crime. *See* Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts

is not admissible to prove the character of a person in order to show action in conformity therewith.").  In addition, the State did not present clear and convincing evidence Smalls committed the prior burglary; in fact, Mead admitted the case was unsolved.  *See State v. Smith*, 300 S.C. 216, 218, 387 S.E.2d 245, 247 (1989) (holding "proof of prior bad acts must be clear and convincing").  The court of appeals correctly ruled trial counsel was deficient in failing to object.

### C.    Opening Statement

In his opening statement, the assistant solicitor told the jury,

> Mr. Green ran out of the store when he was left alone up front, across the street, and called 911.  The Columbia Police Department responded.  Mr. Smalls ultimately took off out of the store with over $1,900 in a plastic bag with the shotgun.  *The police saw him as he was leaving the store.*  He ended up getting away that night, but he ended up leaving behind some very important pieces of evidence. He left behind that shotgun, he also left behind the money, in his quest to get away.

The court of appeals found trial counsel was deficient for failing to challenge the State's comment, "The police saw him as he was leaving the store."  The court of appeals stated, "We hold trial counsel was deficient for failing to challenge the State's comments either by objecting or by pointing out during the closing arguments that the State failed to prove this assertion."  415 S.C. at 499, 783 S.E.2d at 821.

We certainly agree with the court of appeals that these are two of the options counsel has to deal with a misstatement by the State in opening.  However, the simple fact trial counsel does not respond to an incorrect statement made during opening does not render trial counsel's performance deficient.  Under certain circumstances, it may be reasonable for trial counsel to simply ignore the misstatement.  Such a decision could be based on counsel's assessment the point is minor and inconsequential; perhaps it is debatable whether there is evidence to support the statement; or perhaps the circumstances of the trial—as perceived by trial counsel—unfold in such a way that pointing out the misstatement would no longer be beneficial.

Initially, we are not convinced there is no evidence in the record that supports the assistant solicitor's statement.  When crime scene investigator Jim Potash was asked where he found the shotgun, he testified, "I was directed there by the officers, saying

that they were running behind or chasing – trying to chase a suspect from the business itself. They had indicated to me that they saw the person throw or dispose of on the right-hand side going through a fenced area a plastic bag." Green's testimony that he told the officers to intercept the suspect at Lizard's Thicket also appears to support the assistant solicitor's statement. In addition, the PCR court did not make any specific findings as to whether ignoring the misstatement was deficient. Rather, the PCR court appears to have denied relief on this point only on the basis of no prejudice. The court stated, "There is no merit to this claim, opening statements are not evidence, and the jury was told several times by the judge and the attorneys to base their verdict on the evidence only."

With no findings by the PCR court, and in light of the testimony of Potash and Green, we simply cannot say trial counsel was deficient for not addressing this remark in the State's opening that was never mentioned again. *See Stone v. State*, 419 S.C. 370, 380, 798 S.E.2d 561, 566 (2017) (stating "the law requires we presume counsel rendered adequate assistance and exercised reasonable professional judgment" and "the *Strickland* test . . . requires that [the applicant] prove" otherwise (citing *Strickland*, 466 U.S. at 690, 687, 104 S. Ct. at 2066, 2064, 80 L. Ed. 2d at 695, 693)).

We agree with the court of appeals' finding that Smalls proved trial counsel was deficient in two respects.

## IV. Prejudice—Overwhelming Evidence of Guilt

We turn now to the second prong of *Strickland*—prejudice. The State argues Smalls failed to prove prejudice in this case because the State presented overwhelming evidence of Smalls' guilt. We disagree.

To satisfy the prejudice prong, an applicant must demonstrate "there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007) (citing *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693). As the Supreme Court of the United States explained in *Strickland*, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." 466 U.S. at 695, 104 S. Ct. at 2068-69, 80 L. Ed. 2d at 698. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Rutland v. State*, 415 S.C. 570, 577, 785 S.E.2d 350, 353 (2016) (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698).

In determining whether the applicant has proven prejudice, the PCR court should consider the specific impact counsel's error had on the outcome of the trial. *See Strickland*, 466 U.S. at 695-96, 104 S. Ct. at 2069, 80 L. Ed. 2d at 698-99 (explaining that the court must analyze how individual errors of counsel affect the important factual findings in a particular case). In addition, the PCR court should consider the strength of the State's case in light of all the evidence presented to the jury. *See generally Jones v. State*, 332 S.C. 329, 333, 504 S.E.2d 822, 824 (1998) ("In deciding whether Jones was prejudiced, we must bear in mind the strength of the government's case . . . ," and "we must consider the totality of the evidence before the jury."). In general, the stronger the evidence presented by the State, the less likely the PCR court will find the applicant met his burden of proving prejudice. *See Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069, 80 L. Ed. 2d at 699 (stating "a verdict . . . only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support").

In this context, this Court has used the phrase "overwhelming evidence of guilt." In *Geter v. State*, 305 S.C. 365, 409 S.E.2d 344 (1991), for example, we held counsel was deficient for not objecting to repeated references to Geter's time previously spent in jail. 305 S.C. at 367, 409 S.E.2d at 345-46. We then examined the strength of the State's case as part of our consideration of prejudice. We found, "In light of the overwhelming evidence of petitioner's guilt . . . we find no reasonable probability the result of the trial would have been different had counsel's performance not been deficient in this regard." 305 S.C. at 367, 409 S.E.2d at 346. Similarly, in *Ford v. State*, 314 S.C. 245, 442 S.E.2d 604 (1994), we found counsel deficient for declining the trial court's offer to give the jury an alibi charge after Ford testified he was at a nightclub, not the place where the sexual assault occurred. 314 S.C. at 247-48, 442 S.E.2d at 605-06. However, we found "overwhelming evidence of Ford's guilt"— including DNA evidence showing Ford's semen on the victim's clothing—and thus "no reasonable probability that the result of the trial would have been different had counsel accepted the alibi charge." 314 S.C. at 248, 442 S.E.2d at 606. *See also Huggler v. State*, 360 S.C. 627, 634-35, 602 S.E.2d 753, 757 (2004) (finding counsel's deficient performance in not objecting to inadmissible prior consistent statements did not prejudice applicant "given that the witnesses' testimon[y] on direct provided overwhelming evidence that sexual abuse did in fact occur").

Ordinarily, the existence of "overwhelming evidence" does not automatically preclude a finding of prejudice. In *Simmons v. State*, 331 S.C. 333, 503 S.E.2d 164 (1998), for example, we found counsel was deficient for not objecting when the State in closing "improperly inject[ed] parole considerations into the jury's sentencing decision" and otherwise misstated the law regarding sentencing. 331 S.C. at 338-

39, 503 S.E.2d at 167. Despite finding the evidence of Simmons' guilt was "overwhelming," we balanced the impact of counsel's error against the strength of the State's case on the point in question, and found Simmons had proved prejudice. We explained,

> [B]ecause the issue is whether the solicitor's improper argument prevented the jury from fairly considering [its sentencing options], the overwhelming evidence of petitioner's guilt does not eliminate the reasonable probability that the result of the trial would have been different had trial counsel objected to portions of the solicitor's closing argument.

331 S.C. at 340, 503 S.E.2d at 167.

In *Smith v. State*, 375 S.C. 507, 523-24, 654 S.E.2d 523, 532 (2007), we first examined counsel's error—failure to object to improper closing argument—to assess its impact on the jury's determination of guilt, stating "the solicitor's comments were confined to facts established during trial" and "were limited and did not recur throughout his argument." 375 S.C. at 523, 654 S.E.2d at 532. We then considered the strength of the State's case and found "there was also overwhelming evidence of Petitioner's guilt." *Id.* We held, after balancing these and other considerations, "we do not believe there was a reasonable probability that the result of the trial would have been different." 375 S.C. at 524, 654 S.E.2d at 532.

*Simmons* and *Smith* illustrate the proper consideration of the strength of the State's case in the PCR court's analysis of prejudice: it is one significant factor the court must consider—along with the specific impact of counsel's error and other relevant considerations—in determining whether the applicant has met his burden of proving prejudice. In this case, however, neither the PCR court nor the court of appeals appears to have considered the specific impact of counsel's error. Rather, both courts used what they considered "overwhelming evidence of guilt" as a categorical bar that precluded a finding of prejudice, without the necessity of separately considering the impact of counsel's error.

In rare cases, using "overwhelming evidence" as a categorical bar to preclude a finding of prejudice is not error. We did it, for example, in *Rosemond v. Catoe*, 383 S.C. 320, 680 S.E.2d 5 (2009). In *Rosemond*, we found trial counsel deficient for making inappropriate comments to the jury in the guilt phase of a capital trial. 383 S.C. at 325, 680 S.E.2d at 8. Without analyzing the specific impact of that error, we

held, "No prejudice occurred in the guilt phase as the State presented overwhelming evidence of guilt: Rosemond's confession and the murder weapon, which Rosemond helped the police locate.  Further, in his confession, Rosemond admitted to planning the murder of his girlfriend."  *Id.*  We also did it in *Harris v. State*, 377 S.C. 66, 659 S.E.2d 140 (2008), in which we agreed "with the State's assertion" that "Harris was unable to show prejudice . . . due to the overwhelming evidence supporting Harris's guilt."  377 S.C. at 79, 659 S.E.2d at 147.  We did not separately consider the specific impact of counsel's error.  *See also Christenson v. Ault*, 598 F.3d 990, 997 (8th Cir. 2010) (stating, "When there is overwhelming evidence of guilt presented, it may be impossible to demonstrate prejudice," and, "Based on the trial record, demonstrating prejudice resulting from the alleged ineffective assistance would be impossible in this case.").

However, for the evidence to be "overwhelming" such that it categorically precludes a finding of prejudice—as we found it did in *Rosemond* and *Harris*—the evidence must include something conclusive, such as a confession, DNA evidence demonstrating guilt, or a combination of physical and corroborating evidence so strong that the *Strickland* standard of "a reasonable probability . . . the factfinder would have had a reasonable doubt" cannot possibly be met.  In *Franklin v. Catoe*, 346 S.C. 563, 552 S.E.2d 718 (2001), although we discussed the specific impact of counsel's error, we also discussed what is "overwhelming evidence."  346 S.C. at 574-75, 552 S.E.2d at 724-25.  The error was that trial counsel did not advise Franklin of his right to make a personal closing argument during the guilt phase of his capital trial, and did not object to the trial court's failure to obtain a waiver of that right.[5]  346 S.C. at 571, 552 S.E.2d at 723.  As to the prejudice prong, we described the "overwhelming" evidence in detail and stated, "Based on a review of the evidence presented, we can find no evidence whatsoever the jury would have rendered a different verdict had the error not been made."  346 S.C. at 574, 552 S.E.2d at 724.  That evidence included Franklin's DNA on the victim's body, the victim's blood on Franklin's pants, Franklin's bloody palm print on the murder weapon, and the fact it was "impossible to believe a reasonable juror could find the violent brutality of this murder to be the result of consensual sex, as Franklin claimed."  *Id.*  The "overwhelming" nature of the evidence led us to conclude "there is no reasonable possibility Franklin's failure to make a personal closing argument

---

[5] *See* S.C. Code Ann. § 16-3-28 (2015) (requiring that "in any criminal trial where the maximum penalty is death . . . , the defendant and his counsel shall have the right to make the last argument").

to the jury during the guilt phase of his trial contributed in any way to his convictions." 346 S.C. at 574-75, 552 S.E.2d at 725.

In this case, the court of appeals relied on the following evidence in reaching its conclusion the evidence was overwhelming: (1) Green identified Smalls during a photographic lineup; (2) Lightner was able to narrow the suspects down to two—one of whom was Smalls—during a photographic lineup; (3) Smalls' fingerprint was on the shotgun; and (4) Smalls dropped a child and ran from Investigator Gray, who approached Smalls and told him he was the subject of an armed robbery investigation. 415 S.C. at 501-02, 783 S.E.2d at 822.

We begin our review of the evidence with Lightner, who testified he "spent a good bit of time with this person" and he "saw him pretty well." The fact Lightner could only narrow it down to two people in the photographic lineup undermines—not supports—the notion of overwhelming evidence. In addition, Investigator Mead testified that when he showed Lightner the lineup, Lightner "stated that if he had to pick a particular one, he would say [the other person]," not Smalls.

Next, Smalls dropped the child and fled from Investigator Gray. Evidence of flight is evidence of guilt, but we have been hesitant to assign it high probative value. In fact, in *State v. Grant*, 275 S.C. 404, 408, 272 S.E.2d 169, 171 (1980), we stated "evidence of flight tends to be only marginally probative." 275 S.C. at 408, 272 S.E.2d at 171 (quoting *State v. Jefferson*, 524 P.2d 248, 251 (Wash. App. 1974));[6]

---

[6] In *Jefferson*, the State of Washington court of appeals quoted *United States v. Robinson*, 475 F.2d 376, 384 (D.C. Cir. 1973), which cited *United States v. Telfaire*, 469 F.2d 552, 557-58 (D.C. Cir. 1972), which, in turn, this Court has cited on numerous occasions for the danger of mistaken eyewitness identification. *See, e.g.*, *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008) (stating the *Telfaire* jury charge "was designed to focus the attention of the jury on the identification issue and minimize the risk of conviction through false or mistaken identification" (quoting *State v. Jones*, 344 S.C. 48, 60, 543 S.E.2d 541, 547 (2001))); *State v. Simmons*, 308 S.C. 80, 84, 417 S.E.2d 92, 94 (1992) (citing *Telfaire* and "admonish[ing] the trial bench that in single witness identification cases the court should instruct the jury that the burden of proving the identity of the defendant rests with the state"); *State v. Motes*, 264 S.C. 317, 326, 215 S.E.2d 190, 194 (1975) (citing *Telfaire* and discussing the need to "focus[] the attention of the jury on the necessity for a finding that the testimony identified defendant as the offender beyond a reasonable doubt").

*see also State v. Ballenger*, 322 S.C. 196, 200, 470 S.E.2d 851, 854 (1996) (on review of the denial of a directed verdict motion, reversing the court of appeals' finding the State's evidence (including evidence of flight) merely raised a suspicion of guilt,[7] and stating flight is "at least *some* evidence") (emphasis added); *Ballenger*, 322 S.C. at 201, 470 S.E.2d at 855 (Finney, C.J., dissenting) (criticizing the majority because the fact "he ran when he saw the unmarked police car approaching" merely "raise[s] a *suspicion* of guilt" (emphasis in original)). Smalls' flight has little significance in the analysis of whether the State presented overwhelming evidence.

Smalls' fingerprint on the shotgun is the strongest evidence of Smalls' guilt. If the fingerprint experts correctly identified the fingerprint, it conclusively proves Smalls handled the shotgun at some point.

Finally, we turn to Green. In his closing argument, the solicitor stated, "The first piece of evidence I want to talk about is Eugene Green." The solicitor then argued two points to support Green's credibility. First, as to his trial testimony, the solicitor stated, "Eugene Green put his hand on this Bible, faced that man who shoved a shotgun in his chest, and told you under oath, no doubt about it, that's the man who robbed the Bojangles; no doubt about it whatsoever. That's proof beyond a reasonable doubt by itself."

Second, the solicitor belittled the significance of Green's prior convictions in assessing Green's credibility. "You don't think it took guts for Eugene Green to get up on this witness stand, and take an oath, and testify?" Then, referring specifically to Green's prior convictions for drug distribution and possession of a stolen motor vehicle, the solicitor argued,

> You think he was proud . . . ? But you heard about that because [Green] had the guts to take that witness stand and face the man that put a shotgun in his face. . . . And because he had a drug problem seven years ago and a possession of stolen vehicle, are we going to make it alright to shove a shotgun in his chest? . . . And how does that affect his credibility . . . ? Not at all, not at all. That's

---

[7] *See State v. Ballenger*, 317 S.C. 364, 368, 454 S.E.2d 355, 357 (Ct. App. 1995), *rev'd*, 322 S.C. 196, 470 S.E.2d 851 (1996) (finding the State "presented evidence . . . which may raise a suspicion of . . . guilt, but . . . not . . . any direct or circumstantial evidence").

proof beyond a reasonable doubt, Eugene Green's testimony.

As we have explained, the strength of the evidence must be considered along with the specific impact of counsel's errors. When potentially strong evidence such as the fingerprint and Green's identification is tainted by a significant error of counsel, it should not be considered as part of "overwhelming evidence" that precludes a finding of prejudice. Here, the importance we are willing to attribute to the fingerprint on the shotgun is affected by counsel's failure to object to the State's improper question and Investigator Mead's inadmissible answer. Although the existence of the fingerprint would have been admitted into evidence even without counsel's error, the State chose to respond to counsel's suggestion of an innocent explanation for the fingerprint by improperly introducing evidence Smalls committed an uncharged and unproven burglary, impugning his character in violation of Rule 404(b). Trial counsel's failure to object enabled the State to make this improper explanation.

As to Green, the State's emphasis on his identification of Smalls as its "first piece of evidence" must be balanced against counsel's failure to impeach Green with compelling evidence of bias. If trial counsel had cross-examined him on the carjacking charge, and Green testified as he did in the second PCR hearing, his credibility before the jury would have been severely damaged. We do not believe the jury could have heard about the dismissal of the charge without seriously questioning the credibility of everything Green said, including his pre-trial identification of Smalls as the man who committed the robbery.[8]

Eliminating Green's tainted testimony and identification from consideration, and considering the fingerprint in light of the solicitor's improper accusation that Smalls stole the shotgun, we are left with only Lightner's inability to identify Green, which undermines the notion of overwhelming evidence, and Smalls' flight, which is marginally probative and thus has little significance in our analysis. We find the

---

[8] Also, eyewitness identification evidence is not conclusive. *See Perry v. New Hampshire*, 565 U.S. 228, 245, 132 S. Ct. 716, 728, 181 L. Ed. 2d 694, 711 (2012) (stating "we [have] observed that 'the annals of criminal law are rife with instances of mistaken identification'" (quoting *United States v. Wade*, 388 U.S. 218, 228, 87 S. Ct. 1926, 1933, 18 L. Ed. 2d 1149, 1158 (1967))); *State v. Liverman*, 398 S.C. 130, 140, 727 S.E.2d 422, 427 (2012) (citing *Perry* for the proposition that "eyewitness evidence is inherently imperfect"); *see also supra* note 4.

evidence that is not tainted by counsel's errors does not meet the standard for overwhelming evidence we described in *Franklin*—"no reasonable possibility [counsel's errors] contributed in any way to his convictions." 346 S.C. at 574-75, 552 S.E.2d at 725.

Because we find the evidence is not overwhelming, Smalls' individual claims of deficient performance must be analyzed separately to determine whether either of them gives rise to a reasonable probability the result of the trial would have been different without counsel's error. Although the PCR court found overwhelming evidence precluded a finding of prejudice, it did not make specific findings whether counsel's error as to the carjacking charge or prior burglary prejudiced Smalls. *See* Rule 52(a), SCRCP ("In all actions tried upon the facts without a jury . . . , the court shall find the facts specially and state separately its conclusions of law thereon . . . ."); *Hall v. Catoe*, 360 S.C. 353, 364-65, 601 S.E.2d 335, 341 (2004) (repeating our previous directive that PCR courts comply with Rule 52(a) (quoting *Pruitt v. State*, 310 S.C. 254, 256, 423 S.E.2d 127, 128 (1992))).

Ordinarily, the PCR court should make findings of fact on this issue, not us. *See Simmons v. State*, 416 S.C. 584, 593, 788 S.E.2d 220, 225 (2016) (remanding to the PCR court for findings, and stating, "We sit today in an appellate capacity and making findings of fact de novo would be contrary to this appellate setting"). In this case, however, we find it is not necessary to remand to the PCR court, and we have conducted the prejudice analysis ourselves. After balancing trial counsel's errors—failing to cross-examine Green on the dismissal of his carjacking charge and failing to object to evidence Green committed a burglary to obtain the shotgun—against our perception of the strength of the State's case, we find the errors significantly "undermine confidence in the outcome of the trial," *Rutland*, 415 S.C. at 577, 785 S.E.2d at 353, and leave "a reasonable probability that, but for counsel's errors, the result of the trial would have been different," *Ard*, 372 S.C. at 331, 642 S.E.2d at 596.

## V.    Conclusion

We agree with the court of appeals' finding that trial counsel was deficient in two instances. However, we **REVERSE** the court of appeals' finding that the evidence of guilt is overwhelming, and find counsel's errors prejudiced Smalls. We remand to the court of general sessions for a new trial.

**KITTREDGE, Acting Chief Justice, HEARN, JAMES, JJ., and Acting Justice Arthur Eugene Morehead, III, concur.**