# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Lucius Simuel, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2016-001607

Appeal From Beaufort County
Roger L. Couch, Circuit Court Judge

Opinion No. 5774
Heard March 9, 2020 – Filed October 7, 2020

**AFFIRMED**

Appellate Defender Susan Barber Hackett, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Assistant Attorney General Benjamin Hunter Limbaugh, and Assistant Attorney General Sara Elyssa Gunton, all of Columbia, for Respondent.

**MCDONALD, J.:** In this action for post-conviction relief (PCR), Lucius Simuel argues the PCR court erred in finding trial counsel provided effective assistance of counsel despite counsel's erroneous belief that Simuel's prior Georgia conviction for false imprisonment should not qualify as a predicate offense for sentencing purposes in South Carolina. Thus, Petitioner alleges, trial counsel failed to advise

him to accept the State's plea offer or inform him that, if convicted,[1] he would be exposed to a mandatory sentence of life in prison without the possibility of parole (LWOP) under section 17-25-45 of the South Carolina Code.[2]  We affirm.

"Our standard of review in PCR cases depends on the specific issue before us." *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018).  "We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them."  *Id.*  "We review questions of law de novo, with no deference to trial courts."  *Id.* at 180–81, 810 S.E.2d at 839.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel.  *Strickland v.*

---

[1] Petitioner was indicted for assault and battery with intent to kill (ABWIK), possession of a weapon during the commission of a violent crime, and first-degree burglary following a home invasion and shooting in Bluffton.  He was later indicted for possession of a firearm by a prohibited person.  Based on Petitioner's prior record, the State served a timely notice that it would seek life without the possibility of parole should Petitioner be convicted of ABWIK or burglary.

[2] Section 17-25-45 is a recidivist offender statute requiring the imposition of an LWOP sentence for a person convicted of a "most serious" offense when the person has "one or more prior convictions for:  (a) a most serious offense; or (b) a federal or out-of-state conviction for an offense that would be classified as a most serious offense under this section.").  On direct appeal, our supreme court affirmed the trial court's application of § 17-25-45 to Petitioner's case.  *See State v. Simuel*, Op. No. 2012-MO-031 (S.C. Sup. Ct. filed July 25, 2012) (affirming Petitioner's sentence "because the Georgia crime of false imprisonment would be categorized as the 'most serious' offense of kidnapping under South Carolina law.").  *See also* Ga. Code Ann. § 16-5-41(A) (West 2011) ("A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority."); S.C. Code Ann. § 16-3-910 (Supp. 2011) ("Whoever shall unlawfully seize, confine, inveigle, decoy, kidnap, abduct or carry away any other person by any means whatsoever without authority of law . . . is guilty of a felony. . . ."); *State v. Phillips*, 400 S.C. 460, 462, 734 S.E.2d 650, 651 (2012) ("When a prior conviction is for an offense not found in § 17-25-45, trial judges can look to the elements of the prior offense to determine if they are equivalent to the elements of an offense found in the statute for purposes of sentence enhancement.").

*Washington*, 466 U.S. 668, 687–88 (1984).  The right to effective assistance of counsel extends to the plea bargaining process.  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  To prove ineffective assistance, a petitioner must prove trial counsel's performance fell below an objective standard of reasonableness, and but for counsel's errors, there is a reasonable probability that the result would have been different.  *Strickland*, 466 U.S. at 691–94.  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  *Id.* at 700.

"[T]he Sixth Amendment guarantee of effective assistance of counsel requires that counsel accurately inform a defendant, to the extent possible, of the qualifying nature of a prior offense for enhancement purposes."  *Berry v. State*, 381 S.C. 630, 635, 675 S.E.2d 425, 427 (2009).  "[A]n accused is entitled to counsel's considered and reasonable judgment."  *Id.*  "In fact, uncertainty concerning a potential legal challenge may well provide a defendant a catalyst in plea negotiations with the State."  *Id.*

In *Lafler*, the key issue before the United States Supreme Court was how to apply *Strickland's* prejudice test when trial counsel failed to sufficiently evaluate and convey the State's plea offer to the petitioner.  566 U.S. at 163.  The Court held that in these circumstances, a petitioner must show that but for the ineffective assistance, there is a reasonable probability that the plea offer would have been presented to the court, the court would have accepted its terms, and the conviction or sentence, or both, would have been less severe under the terms of the offer than under the judgment and sentence imposed.  *Id.* at 164.

On the same day the Supreme Court issued *Lafler*, it released *Missouri v. Frye*, 566 U.S. 134, 147 (2012), holding "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."  To establish prejudice, it is necessary for a defendant to "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  *Id.*  A defendant "must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."  *Id.*

Here, Petitioner testified the State's plea offer "was never negotiated" but would have been conditioned on his future testimony against his co-defendant.  As to a plea offer of twenty years, Petitioner stated, "Well he [trial counsel] told me that he

possibly, possibly could."  When asked about any erroneous sentencing advice, Petitioner responded trial counsel never gave him an opinion as to the possibility that the prior Georgia conviction could trigger the LWOP statute because "[w]e never discussed it."  He did, however, admit that he "received a letter that the State was seeking life without parole, but I didn't fully understand it."

By contrast, when trial counsel was asked whether he and Petitioner discussed the "very issue" of whether Petitioner's prior Georgia false imprisonment conviction "would count as a most serious offense and therefore trigger the life without parole mandatory sentencing," trial counsel responded succinctly:  "We did."  He then explained he advised Petitioner that while he did not believe the prior Georgia conviction *should* qualify as a predicate "most serious" offense—and he would oppose an LWOP sentence if Petitioner were convicted—he also recognized it was possible the trial court would disagree with his position.  Trial counsel stated, "And yes, if I lose on that issue and he's convicted, life without parole, nothing that the Judge can do about it."[3]  Trial counsel also informed Petitioner that even if the trial court determined the State's LWOP notice was invalid, it could impose a sentence of fifteen years up to life imprisonment based on the statutory sentencing range for first-degree burglary.  *See* § 16-11-311(B) ("Burglary in the first degree is a felony punishable by life imprisonment.  For purposes of this section, 'life' means until death.  The court, in its discretion, may sentence the defendant to a term of not less than fifteen years.").  To trial counsel, this distinction was "[e]xtremely, important" because without the triggering of the LWOP statute, it was possible Petitioner could receive as little as fifteen years if convicted on the burglary charge.[4]

Thus, evidence supports that trial counsel informed Petitioner he could receive a life sentence in one of two ways: through the potential application of the LWOP statute, or if the court imposed the maximum sentence for a burglary conviction.  This differs from the situation in *Lafler*, *supra*, which went to the Supreme Court "with the concession that counsel's advice with respect to the plea offer fell below

---

[3] Counsel further testified, "I mean, I shared with him my, my belief that the law didn't support the triggering of the life without parole statute.  I mean, it was obvious that the Solicitor believed that it did and he and I had a difference of opinion."

[4] Standing alone, Petitioner's maximum exposure on the ABWIK charge was twenty years.  *See* § 16-3-620 (Supp. 2009) ("The crime of assault and battery with intent to kill shall be a felony in this State and any person convicted of such crime shall be punished by imprisonment not to exceed twenty years.").

the standard of adequate assistance of counsel guaranteed by the Sixth Amendment, applicable to the States through the Fourteenth Amendment." *Lafler*, 566 U.S. at 160. Counsel's testimony as to his analysis of the LWOP exposure supports the PCR court's finding that Petitioner made an informed decision to reject State's twenty-year offer and proceed to trial, hoping for as little as fifteen years, but knowing he faced the possibility of LWOP, or a life sentence for burglary.[5] *See Smalls*, 422 S.C. at 180, 810 S.E.2d at 839 ("We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them.").

Evidence also supports the PCR court's finding that Petitioner failed to prove he was prejudiced by any failure of trial counsel to properly advise him. Petitioner admitted he received the State's LWOP notice; however, he provided no evidence to the PCR court, such as a self-serving statement, that he would have pled guilty had he been advised the trial court would reject trial counsel's argument and determine the prior Georgia conviction qualified as a predicate offense. *See Bell v. State*, 410 S.C. 436, 443, 765 S.E.2d 4, 7 (Ct. App. 2014) ("[I]t is not always necessary for a[n applicant] to offer objective evidence to support a claim of actual prejudice. Instead, depending on the facts of the case, a[n applicant's] self-serving statement may be sufficient to establish actual prejudice.").

Finally, Petitioner's statements denying the plea offer was ever "negotiated" to him—while recognizing the offer would be conditioned upon his cooperation against his co-defendant—cast doubt upon Petitioner's credibility. Although the PCR court made no specific credibility findings, trial counsel's testimony contradicting Petitioner's claim that he and trial counsel "never discussed" the LWOP risk at all further supports the PCR court's determination that trial counsel "properly advised [Petitioner] as to life without parole." Accordingly, we affirm the PCR court's denial of post-conviction relief.

**AFFIRMED.**

**HUFF and THOMAS, JJ., concur.**

---

[5] Petitioner did not make a separate claim that trial counsel failed to communicate the plea offer to him. Trial counsel testified that the twenty-year plea deal was offered and Petitioner rejected it. Counsel did not recall that the State conditioned the plea offer on Petitioner's testimony against his co-defendant, "but if he [Petitioner] says that is what it was, then I'm pretty sure that it was."