**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Marc Anthony Palmer, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2023-000040

---

Appeal From Williamsburg County
Edward W. Miller, Circuit Court Judge

---

Unpublished Opinion No. 2026-UP-142
Submitted February 3, 2026 – Filed March 25, 2026

---

**AFFIRMED**

---

Appellate Defender Gary Howard Johnson, II, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Danielle Dixon, all of Columbia, for Respondent.

---

**PER CURIAM:** We issued a writ of certiorari to review the circuit court's denial of post-conviction relief (PCR) to Marc Anthony Palmer. Palmer argues the court erred by finding (1) counsel was effective despite failing to object during the

solicitor's closing argument and (2) no prejudice to Palmer because the outcome of the trial would not have been changed if counsel had objected. We affirm, finding even if counsel was ineffective, Palmer failed to prove resulting prejudice.

**FACTS**

Palmer was convicted of murder and possession of a weapon during the commission of a violent crime and sentenced to life in prison for murder, plus five years for possession of a weapon during the commission of a violent crime, to be served consecutively. He appealed and this court affirmed the convictions but vacated the sentence for possession of a weapon during the commission of a violent crime. *State v. Palmer*, 415 S.C. 502, 525, 783 S.E.2d 823, 835 (Ct. App. 2016). Palmer petitioned for certiorari raising multiple issues. This court granted the petition solely on the first issue: whether the PCR court erred in denying relief on the issue of counsel's failure to object to the solicitor's closing argument.

In his petition, Palmer raised more than twenty objectionable statements made by the solicitor during her closing arguments. Palmer's PCR counsel raised numerous statements made by the solicitor during the hearing on the petition, including the following:

*Personal attack against Palmer and calling him a liar*:

> [W]hen I talked about [Palmer] cutting his hair, I wasn't talking about it because I thought he was trying to conceal evidence on his hair. I was talking about it because he is trying to present an image to you of a person he is not. You know he comes into this courtroom[, and] he wants to portray himself as conscientious, studi[ou]s, and you know he hits all the high marks. Young man not married[-]check, no children[-]check, college student[-]check, clean cut[-]check, nice suit[-]check, nice tie[-]check, shiny shoes[-] check. He wants to create the best possible impression on this jury[,] but it's a lie. The image that you saw in this courtroom this week folks[,] that's a lie[,] and just like he told me when I'm asking him questions, don't get it twisted. Ladies and gentlemen[,] you all cannot get it twisted because . . . the person that you see in the courtroom is not the same individual who in his

private life . . . took a .45 caliber pistol and loaded . . . bullets into the victim[']s body.

* * *

[I]t was amusing to watch because on direct testimony when [Palmer is] being questioned about his lawyer[,] I'm sitting there[,] and I was looking at him[,] and so he's sitting in this witness chair and he's done all the good things a witness is suppose[d] to do.  He turns around in his chair, he's talking appropriately, sound[s] very intelligent, he's making good eye contact with the jurors, he's hitting all the high marks now.  He ain't no dumb fella by any means, he's not as smart as he thinks he is, but he ain't [a] dumb fella by no stretch of the imagination.  So he gets up and he wants to present this image to you of who he wants you to believe he is, but the image and his reality are conflicting because they're not the same.

*Bolstering the credibility of witnesses*:

I got somebody that puts the murder weapon in [Palmer's] hand[;] can you please just not violate this guy if he comes forward and he tells me the truth[?]

I would submit to you that there is something incredibly liberating about prison and I know that sounds ironic . . . but when you go to prison and you're doing your time[,]  . . . it kind of allows you to get it off your chest . . . .

Here is where I think it's so important and why I would submit to you that he is believable.

*Golden Rule Argument*:

He committed a cold blooded, ruthless murder[,] and at some point[,] if we're going to just lie down and

surrender ou[r] community to this type of street justice[,]
then it's time for all of us to han[g] our hats up. We
mi[ght] as well go home. Judge Young mi[ght] as well
retire his robe. I mi[ght] as well quit this job and just do
only private practice and we mi[ght] as well quit blowing
our money away [and] destroy that courthouse across the
street because we don't need it. If [Palmer] can come in
here and kill somebody in cold blood and walk away . . .
because he had the presence of mind to throw away the
evidence. . . . [W]e mi[ght] as well . . . all say that we're
done. I [implore] you all not to do that . . . .

When questioned during the PCR hearing why he did not object, Palmer's counsel
testified that he would raise objections to a closing argument "post-argument. I . . .
think the criminal rules prevent an objection while the solicitor is arguing. I mean,
I think the criminal rule says shall not interrupt opposing counsel." During cross-
examination, trial counsel testified he viewed the solicitor's statements as
"summation[s] of the evidence."

The PCR court considered these statements, and other allegedly objectionable
statements, made by the solicitor during closing arguments. The court found
counsel was not ineffective for failing to object based on counsel's testimony that
he believed the statements were "reasonable summation[s] based on the evidence
presented," and as to the solicitor's alleged Golden Rule Argument, the court found
the solicitor's argument did not "ask the juror[s] to put themselves in the place of
the victims." Thus, the court found the solicitor did not make a Golden Rule
Argument. The court found that even if counsel was ineffective for failing to
object, Palmer failed to prove any resulting prejudice. Accordingly, the court
denied and dismissed the application for PCR.

**STANDARD OF REVIEW**

"In [PCR] proceedings, the burden of proof is on the applicant to prove the
allegations in his application." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512,
514 (2008). "We defer to a PCR court's findings of fact and will uphold them if
there is evidence in the record to support them." *Smalls v. State*, 422 S.C. 174,
180, 810 S.E.2d 836, 839 (2018). "We review questions of law de novo, with no
deference to trial courts." *Id.* at 180–81, 810 S.E.2d at 839.

**LAW/ANALYSIS**

"A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution." *Taylor v. State*, 404 S.C. 350, 359, 745 S.E.2d 97, 101 (2013). To establish a claim of ineffective assistance of counsel, a PCR applicant must show (1) counsel was deficient and (2) counsel's deficiency prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficiency, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700. "[The appellate c]ourt gives great deference to a PCR judge's findings where matters of credibility are involved." *Simuel v. State*, 390 S.C. 267, 270, 701 S.E.2d 738, 739 (2010).

Here, we find counsel's failure to object based on his belief that the rules prohibited him from objecting during the solicitor's argument constituted deficient performance. *See Smalls*, 422 S.C. at 181, 810 S.E.2d at 840 ("To prove trial counsel's performance was deficient, an applicant must show 'counsel's representation fell below an objective standard of reasonableness.'" (quoting *Williams v. State*, 363 S.C. 341, 343, 611 S.E.2d 232, 233 (2005))). Failure to preserve an issue for appellate review may be deemed deficient performance. *See Foye v. State*, 335 S.C. 586, 590, 518 S.E.2d 265, 267 (1999) (finding trial counsel was deficient for failing to adequately preserve an issue for appeal). In addition, we find the PCR court erred in relying on counsel's testimony that he believed the solicitor's statements to be mere summations of the evidence. Here, counsel admitted during cross-examination that the Golden Rule Argument allegation could be viewed as such. He further admitted the impropriety of pitting witnesses against each other and arguing facts not in the record. We find the PCR court erred in finding counsel was not ineffective.[1]

We next turn to the prejudice prong of a claim of ineffective assistance of counsel. Palmer argues the solicitor's statements were prejudicial because the State lacked a murder weapon, DNA, fingerprints, and gunshot residue. In addition, Palmer

---

[1] We agree with the State that many of the issues raised in Palmer's petition and brief are not preserved. However, our review of the preserved issues convinces us counsel was ineffective.

argues the two witnesses who identified him were biased, improperly bolstered in their testimony, or influenced in their identification by police investigators.[2]

Establishing ineffective assistance of counsel also requires an applicant to show "counsel's deficient performance prejudiced the applicant's case." *Speaks*, 377 S.C. at 399, 660 S.E.2d at 514 (citing *Strickland*, 466 U.S. at 687). To establish prejudice, a "PCR applicant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bennett v. State*, 383 S.C. 303, 309–10, 680 S.E.2d 273, 276 (2009) (quoting *Cherry v. State*, 300 S.C. 115, 117–18, 386 S.E.2d 624, 625 (1989)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To make this determination, an appellate court reviews the improper argument in the context of the entire record, including whether there is overwhelming evidence of the defendant's guilt. *Simmons v. State*, 331 S.C. 333, 338, 503 S.E.2d 164, 166 (1998).

After our review of the record, we find no reasonable probability the result of the trial would have been different had counsel objected to the solicitor's statements. "The relevant question is whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Humphries v. State*, 351 S.C. 362, 373, 570 S.E.2d 160, 166 (2002). Here, the trial court instructed the jury that it was "the sole and the exclusive judge[] of the facts in a case" and that it was the jury's "duty to determine the effect, . . . the weight, and the truth of the evidence during [the] trial." Although the court did not specifically instruct the jury after closing arguments that counsel's arguments are not evidence, it instructed the jury during opening instructions, "[Y]our purpose is to determine the facts in this case. You are to determine the facts from the testimony that you'll hear from the witness stand and any other evidence that is introduced here in court." The court also stated in opening instructions, "Let me remind you that what the attorneys tell you during their opening statements is not evidence in this case."

---

[2] Maurice Smith was facing numerous charges and, after changing his story regarding the events here, he received a plea deal, implicated Palmer at trial, and received a downward sentencing recommendation after testifying against Palmer. The trial court sustained the State's objection to Palmer's attempt to cross-examine Smith on the plea negotiations and benefits he received. Palmer alleges Britney Croskey identified Palmer based solely on his manner of walking, which was an idea allegedly influenced by the police officer who interviewed her.

As to the evidence, there were three eyewitnesses to the events, even if the credibility of two was in question. Levar Wesley Walker testified the shooter wore a "ponytail puffed up with hair," which Walker had seen Palmer wear. Witnesses, including Detrel Matthews, testified to previous animosity between the victim and Palmer. There was also evidence of an altercation between Palmer and another person during which Palmer purportedly had a gun. Matthews also reported during an interview that his brother had returned a .45 caliber handgun to Palmer before the shooting. In addition, .45 caliber shell casings were recovered from the scene of the shooting. Also, surveillance video from a business close to the shooting showed Palmer's greenish-colored Neon, missing a hubcap, on the road at about the same time the 9-1-1 call was made. Changing his story from his initial statement, Palmer admitted it was his vehicle. We find the result of the trial would not have been different absent counsel's ineffectiveness; thus, we find Palmer failed to establish prejudice. *See Strickland*, 466 U.S. at 696 (describing prejudice to require "that the decision reached would reasonably likely have been different absent the errors").

**CONCLUSION**

For the foregoing reason, the PCR court's ruling is

**AFFIRMED.**[3]

**THOMAS, MCDONALD, and TURNER, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.