**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Stanley Moultrie, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2022-001326

---

Appeal From Georgetown County
William H. Seals, Jr., Circuit Court Judge,
Kristi F. Curtis, Circuit Court Judge

---

Unpublished Opinion No. 2025-UP-347
Submitted September 1, 2025 – Filed October 15, 2025

---

**AFFIRMED**

---

Elizabeth Anne Franklin-Best, of Elizabeth Franklin-Best, P.C., of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Assistant Attorney General Ambree Michele Muller, both of Columbia, for Respondent.

---

**PER CURIAM:**  Stanley Moultrie ("Petitioner") appeals the post-conviction relief (PCR) court's order denying relief.  Petitioner argues the PCR court erred in finding his trial counsel was not deficient in failing to object to improper vouching

during the State's closing argument and that he was not prejudiced by those statements. We affirm.

On January 20, 2015, Joyce Messinger ("Victim") was working at the Shoe Show in Georgetown when a man wearing a blue jumpsuit, blue cap, and round-rimmed glasses entered the store. Victim testified the man requested a shoe in size thirteen, but it was not in stock, so Victim called another store to see if they had a pair. While her back was turned, the man grabbed her, put a knife to her neck, and told her to open the safe. Victim told the man there was no safe, and he demanded she give him all the money in the register. After she handed him the money, the man told her to keep her back turned until he was out of the store. Once the man left, Victim locked the door and called 911. When the officer arrived, Victim gave a description of the assailant. A couple of days later, Victim viewed a photographic lineup, and she said the assailant was not in it. Victim viewed a second lineup about ten days later and identified Petitioner as the assailant.[1] Petitioner was arrested and charged with armed robbery and kidnapping.

After the jury was sworn in, the trial court told the jurors, "The attorneys appearing before you are advocates for the parties that they represent, but first and foremost, they are officers of the [c]ourt sworn to uphold the integrity and fairness of our judicial system and to help you in your search for the truth." The trial court also instructed that "in determining what the true facts are in this case, you . . . must decide whether or not the testimony of the witnesses is believable." During the trial, the State presented multiple pieces of evidence to prove Petitioner's guilt. Victim testified as to the events that transpired as well as to her identification of Petitioner in a photographic lineup. Victim testified she unlocked the door to the Shoe Show at 9:30 and just a few minutes later, the assailant entered. Sergeant Jason Ward testified that surveillance videos from nearby stores showed a car enter and exit the Shoe Show parking lot multiple times before parking at 9:34. Sergeant Ward testified the video showed a man exit the car and walk into the Shoe Show at 9:37 and then walk back down the sidewalk at 9:45. Sergeant Ward stated he "could tell [the man was wearing] a jumpsuit and based on the victim's description . . . [he] knew it was a blue jumpsuit and ball cap with glasses." Investigators were able to identify the tag on the car from the video, and the car was registered to Petitioner. Petitioner's phone records placed him in the vicinity of the Shoe Show at the time of the robbery. Officers executed a search warrant on Petitioner's home

[1] Petitioner's photo was not included in the initial lineup. Once the suspect's car in the parking lot was identified as belonging to Petitioner, a second lineup was prepared with his photo.

and found size thirteen shoes in his closet, round-rimmed glasses, and a blue Dickie's jumpsuit. The car seen in the surveillance footage was also found at Petitioner's home.

Prior to closing arguments, the trial court informed the jury "that arguments of counsel [are] not evidence in this case." The solicitor began the State's closing argument by asserting he "want[ed] to go over some of the things that he found very important in the case." After stating it was the jury's duty to determine Victim's credibility, the solicitor made the following comments:

> Some of the things you're gonna look at are her demeanor on the stand; how was she; did she act like she was hiding something or was she being straightforward with you; what was her emotional state, was she disconnected, was she acting, was she playing a part? What she showed on that stand was pure and genuine in every aspect in every way it could possibly be. This is not acting; she is about as real as it gets. The emotion you saw from that stand was genuine. Just listen to the 911 tape. . . . What did she say? Does the story she said make[] sense? Think about the testimony and what happened on [the day of the robbery].

The solicitor also noted Victim's testimony appeared consistent with the other evidence in the case, including security footage near the scene of the robbery and Petitioner's cell phone records. Later, the solicitor argued Victim's testimony alone was "enough . . . to support a conviction" if the jury found her credible, which "in [his] opinion she was for the reasons [he had] stated." He argued the other evidence was "just extra fluff" to make the jury "feel good about the decision [it had] to make." The solicitor stated further, "You have to jump towards all sorts of conclusions to find [reasonable doubt]. You have to first say that [Victim]'s testimony is not credible, that she's either lying or she's just not capable of telling the truth." Petitioner's trial counsel did not object to any of the State's closing argument. In its instructions to the jury, the trial court explained the jury was "the sole and exclusive judge of the facts," and it was its "duty alone to determine the effect, value, weight, and truth of the evidence presented during the course of th[e] trial[,]" including the credibility of the witnesses.

Petitioner was convicted of armed robbery but acquitted on the kidnapping charge. The trial court sentenced him to life without parole. Petitioner appealed his

conviction and sentence, and this court affirmed both in an unpublished opinion. *State v. Moultrie*, 2019-UP-013 (S.C. Ct. App. filed Jan. 9, 2019).

Petitioner filed a *pro se* application for PCR and two amendments. The PCR court found trial counsel was not deficient for failing to object to the State's alleged vouching for Victim's credibility, finding "nothing [it] stated rose beyond the level of fair inferences drawn from [Victim's] testimony." The PCR court also found Petitioner was not prejudiced by the alleged deficiency because the evidence against him was overwhelming. Petitioner did not appeal. Petitioner then filed a second PCR application, seeking a belated appellate review of his first PCR action pursuant to *Austin v. State*[2] due to PCR counsel's failure to file a timely notice of appeal. The second PCR court granted Petitioner belated review of his first PCR action. Petitioner then filed a petition for writ of certiorari which this court granted. This appeal followed.

## ISSUE ON APPEAL

Did the PCR court err in finding Petitioner did not receive ineffective assistance of counsel where counsel failed to object to the solicitor's statements vouching for the State's witness?

## STANDARD OF REVIEW

The standard of review in PCR cases depends upon the specific issue presented. *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018). A reviewing court "defer[s] to a PCR court's findings of fact and will uphold them if there is any evidence in the record to support them." *Id.*; *see also Putnam v. State*, 417 S.C. 252, 260, 789 S.E.2d 594, 598 (Ct. App. 2016) (stating an appellate court "gives great deference to the PCR court's findings on matters of credibility"). However, questions of law are reviewed de novo, "with no deference to trial courts." *Smalls*, 422 S.C. at 180-81, 810 S.E.2d at 839.

## LAW/ANALYSIS

Petitioner argues trial counsel was ineffective for failing to object to the solicitor's comments in which he improperly vouched for Victim by expressing his personal opinion regarding Victim's credibility. Petitioner further argues he was prejudiced by counsel's failure to object.

---

[2] 305 S.C. 453, 409 S.E.2d 395 (1991).

To establish a claim of ineffective assistance of counsel, a PCR applicant must show (1) counsel was deficient and (2) counsel's deficiency prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficiency, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

This case turns on the prejudice analysis required by *Strickland*'s second prong. *See Hillerby v. State*, 431 S.C. 323, 333, 847 S.E.2d 500, 505 (Ct. App. 2020) ("We do not have to examine both deficiency and prejudice in every case."); *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."). "Improper comments do not require reversal if they are not prejudicial to the defendant, and the appellant has the burden of proving he did not receive a fair trial because of the alleged improper argument." *Randall v. State*, 356 S.C. 639, 642, 591 S.E.2d 608, 610 (2004). Accordingly, an appellate court must determine whether the improper argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* To make this determination, an appellate court will review the improper argument in the context of the entire record. *Simmons v. State*, 331 S.C. 333, 338, 503 S.E.2d 164, 166 (1998).

We hold the PCR court properly found Petitioner was not prejudiced by trial counsel's failure to object to the solicitor's statements. *See Smalls*, 422 S.C. at 188, 810 S.E.2d at 843 ("In determining whether the applicant has proven prejudice, the PCR court should consider the specific impact counsel's error had on the outcome of the trial. In addition, the PCR court should consider the strength of the State's case in light of all the evidence presented to the jury." (citation omitted)); *Martin v. State*, 427 S.C. 450, 456, 832 S.E.2d 277, 280 (2019) ("Additionally, the strength of the State's evidence should be viewed in light of trial counsel's errors such that there 'is no reasonable possibility [counsel's errors] contributed in any way to [the applicant's] convictions.'" (citation omitted)). The State presented several pieces of evidence in addition to Victim's testimony tending to show Petitioner's guilt, including: surveillance video placing a car registered to Petitioner at the crime scene around the time of the crime, surveillance video showing a man exiting that car and entering the store, clothing and glasses found at Petitioner's home matching those worn by the assailant, multiple pairs of size thirteen shoes in Petitioner's closet; and cell phone location data placing Petitioner in the area of the store

around the time the crime occurred. The car seen on the surveillance video was also found at Petitioner's home.

The State also introduced Victim's identification of Petitioner in a photographic lineup. Since the identification took place over a year prior to trial, it was not tainted by any improper bolstering of Victim's trial testimony by the solicitor. Additionally, any prejudice Petitioner may have suffered from the improper vouching was further lessened by the solicitor's statement to the jury that they "[were] the ones that determine the credibility in [Victim]", as well as the trial court's instructions that arguments of counsel are not evidence and that it was the jury's duty alone to decide the credibility of the witnesses. Moreover, the kidnapping acquittal shows that the jury properly exercised its discretion to believe portions of Victim's testimony or the State's evidence but to reject others. Thus, the solicitor's statements could not have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Simmons*, 331 S.C. at 338, 503 S.E.2d at 166-67.

Upon review of the improper statements in the context of the entire record, we find there is not a reasonable possibility that any alleged errors by trial counsel contributed to Petitioner's convictions. We find there was sufficient evidence of Petitioner's guilt such that there is no reasonable probability the outcome would have been different regardless of counsel's failure to object to the solicitor's statements. Therefore, we hold the PCR court correctly found Petitioner was not prejudiced by counsel's alleged deficiency.[3]

Accordingly, the order of the PCR court is

**AFFIRMED.**[4]

**MCDONALD, HEWITT, and TURNER, JJ., concur.**

---

[3] We do not need to determine if counsel's performance was deficient as our finding that Petitioner was not prejudiced is dispositive. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.